## Case No. 3,106.

### CONNECTICUT MUT. LIFE INS. CO. v. BOWLER.

### SAME v. PLUMMER.

[Holmes, 263.] [1]

Circuit Court, D. Maine. Oct., 1873.

EXTENT OF LIABILITY OF SURETY OF PARTNERSHIP—DISSOLUTION.

1. A surety upon a bond given by a partnership to an insurance company to secure the faithful performance by the firm of the duties of agents of the company, and payment to it of the amounts received by the firm as such agents, is liable in an action on the bond, brought after the dissolution of the firm by death of one of the partners, only for amounts received by the firm as agents of the company, before the dissolution.

2. The surety is not liable on the bond for amounts received after the dissolution, by the surviving partner, then acting as agent of the company.

3. Nor for amounts received by sub-agents before the dissolution of the firm, and after the dissolution paid by them to the surviving partner, then acting as agent of the company.

[Actions at law by the Connecticut Mutual Life Insurance Company against James H. Bowler, and by the same plaintiff against Patience C. B. Plummer.]

J. S. Rowe, for plaintiff.

E. F. Hodges, for defendants.

SHEPLEY, Circuit Judge. This is an action at law against the defendant, Bowler, as surety in a bond, given to secure the faithful performance of their duty, as agents of the plaintiff corporation, by the firm of B. Plummer & Sons, composed of Patience C. B. Plummer and Watson E. Plummer. The condition of the bond is as follows: "Now, therefore, if the said B. Plummer & Sons shall promptly pay to said company the amount received from time to time, and shall well and truly perform all and singular the duties as agents of said company, as directed, according to the provisions of the charter, by-laws, rules, and regulations of said company, now existing, or which may be adopted by said company, for and during the time he officiates as said agent, and shall deliver all the property which he may receive and hold as agent to his successor in said office, or to such other person as the said company or its authorized officers may direct, then this obligation shall be null and void; otherwise remain in full force and virtue."

On the 18th of March, 1871, Watson E. Plummer, one of the firm, died suddenly at Quebec, leaving Patience C. B. Plummer sole surviving partner of said firm. The firm of B. Plummer & Sons, among other things incumbent on them as agents, received from the plaintiff company receipts for moneys to be paid by parties insured in the company,

as premiums upon the renewal of policies. These receipts were forwarded monthly to meet the premiums falling due the succeeding month. On the 18th of March, when Watson E. Plummer died, the firm had collected, on renewal receipts for that month of March, the sum of $2,933.96, from which they were entitled to deduct as commission $346.35, leaving due to the company the sum of $2,587.61. This amount, not having been paid to the company, and having been collected by the firm prior to the decease of Watson E. Plummer, is unquestionably covered by the bond; and for this amount, with interest from the 18th of March, 1871, the company is entitled to judgment against the surety.

On the 18th of March, the company forwarded to the address of said firm at Bangor, Maine, the renewal receipts for the month of April. These in due course were received at the Bangor office on the 22d of March, four days after the death of Watson E. Plummer. Patience C. B. Plummer continued to transact the business of the agency at Bangor, in the same manner as it had been previously conducted by the firm, until the last day of April, 1871, when the agency was revoked, and F. S. Coffin was appointed agent in place of said firm, and the business was conducted by him from that time forward, Patience C. B. Plummer receiving the premiums on the renewal receipts for the time previous to the month of May.

The collections of premiums upon the April renewal receipts were made during the months of April, May, June, and July; and on the twenty-fourth day of August, according to a final account rendered to the company, there was due to said company for such collections, after deducting charges and commissions, a net amount of $29,955.70, for which sum demand was made on the defendants; and, on refusal, an action was brought against Bowler, the defendant in this suit, and another against the surviving partner.

The sum of $29,955.70 includes the sum of $2,587.61, due for collections prior to the death of Watson E. Plummer. It also includes the collections on the April renewal receipts, received after the death of Watson E. Plummer, and also some money (the amount of which does not appear) which was collected by sub-agents on receipts which came into the hands of the firm prior to the eighteenth day of March, 1871, and had been transmitted to the sub-agents, and not returned to the Bangor office until after that day. For these collections the company claims that Bowler is responsible to the extent of the penal sum in the bond. Upon the facts agreed and proved in the case, it seems clear, upon careful examination of the facts and application of the law, that the liability of Bowler cannot justly be extended beyond the sum of $2,587.61, due from the

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

firm at the time of the death of Watson E. Plummer. When he died, the partnership, for whose acts and omissions alone Bowler had become surety, was dissolved, and his liability was terminated. All subsequent payments to a surviving member of the firm by policy-holders or sub-agents, whether on receipts transmitted by the firm for collection before the decease of one of the partners, or by the surviving partner after the decease, were payments to parties other than the firm of B. Plummer & Sons; they were not received by that firm "from time to time" during the agency or existence of the firm, nor received "for and during the time he officiates as said agent." All such collections were acts to which the surety was a stranger, and respecting which he had assumed no responsibility. On the death of Watson E. Plummer, the sub-agents ceased to be sub-agents of the copartnership. If they ever stood in that relation to B. Plummer & Sons, as sub-agents of theirs rather than of the company, the death of one of the principals would have terminated the agency. Watson E. Plummer's representatives clearly were not responsible for the moneys collected by the surviving partner after his decease; and Bowler, the surety, could have no claim upon the estate of Watson E. Plummer for any sum he might be compelled to pay as surety for the faithful application of funds which did not come into the hands and possession of the firm before his decease. Bowler might have entered into the contract of suretyship, relying solely on his knowledge of the business capacity and personal integrity and pecuniary responsibility of Watson E. Plummer. Whether he did so or not, he is entitled to the benefit of that, so far as it is a protection to him; and when death deprives him of that, his liability for subsequent acts is terminated eo instanti with the dissolution of the partnership.

Where a copartnership is dissolved by the death of one of the copartners, no notice of the dissolution is necessary; and the surviving members are not bound by any new contract entered into by one of the firm in the copartnership name after such dissolution, although it is made with a person who had previously dealt with the firm, and who had no notice or knowledge that it was terminated by the death of one of the members. Nor can the estate of the deceased partner, nor his heirs or personal representatives, be held on a contract entered into in the name of the firm subsequently to his death, although no notice of the dissolution of the firm has been given. Marlett v. Jackman, 3 Allen, 290; Washburn v. Goodman, 17 Pick. 526; 3 Kent, Comm. (6th Ed.) 67; Griswold v. Waddington, 15 Johns. 57, 16 Johns. 438.

It is claimed that Bowler is liable on the ground that funds in the hands of the sub-agents on the 18th of March, 1871, are to be treated as constructively in the hands of B. Plummer & Sons, so as to charge the surety. There is nothing in the case tending to show that, in the absence of default of payment, or embezzlement by agents, B. Plummer & Sons were liable to pay to the company, until they received the money of the sub-agents. These sub-agents were appointed by them to be sub-agents of the company, and acted under their instructions; but the appointment was made, and the instructions were given, by them as agents of the company. Even if they were personally responsible for any default of the sub-agents, the case does not find any such default occurring before the death of Watson E. Plummer or afterwards. If, after they had ceased to have any relation of agency to B. Plummer & Sons, they paid money to the surviving partner, it would not be on the responsibility of Bowler, especially when such surviving partner, as in this case, was recognized as the agent of the company so that a payment to her was, so far as the sub-agents were concerned, a payment to the company itself. The damages in this case, according to the agreement of the parties, are assessed at the sum of $2,587.61, with interest from the eighteenth day of March, 1871. In the case of Connecticut Mut. Life Ins. Co. v. Plummer, the damages are assessed at the sum of $29,955.70, with interest from August, 1871. This sum includes the sum for which Bowler, the surety, is also liable on the bond given by Plummer & Sons. Judgment accordingly.