PRIOR, *Plaintiff in Error.* v. KISO *et al.*

1. **Lease under Seal**: SURRENDER OF. A lease under seal may be surrendered or changed by a subsequent parol contract, or by a contract in writing under seal, or without seal.

2. **Sureties for Payment of Rent**; CHANGE OF CONTRACT: RELEASE. Sureties who contract for the payment of rent by two lessees jointly, are discharged by an agreement by the lessor, without their consent, that one of the lessees may retire from the leased premises and that the lessor will look to the other lessee for the rent.

3. **Lessor Receiving Back Material Part of Premises**: SURETIES. And if the lessor, without the consent of such sureties, receives back from the lessees a material part of the leased premises, the sureties will be discharged.

4. **Lessee Receiving Part of Premises**: WAIVER. Where a lessee accepts less of the premises than he is entitled to demand under his contract, and holds the same, as in this case, for a period of fifteen months, it is a question for the jury to determine whether or not he has waived a full performance of the contract on the part of the lessor.

5. ———: RENT PRO TANTO. Where the lessee obtains only part of the leased premises without assenting to the withholding of the residue, the lessor can only recover rent *pro tanto* for the part received.

*Error to Cole Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*Edwin Silver* for plaintiff in error.

The separate answer of John Kiso expressly admits that under the contract of lease he and Hermann Kiso entered into possession of the leased premises, except as afterward stated, did the work and labor and paid for the rent for fifteen months, as alleged in the petition. The lessees having so ratified and acquiesced in the possession given, cannot now complain of its insufficiency. *Crommelin v. Theiss*, 31 Ala. 412; *Cram v. Dieser*, 2 Sandf. (N. Y.) 121; *Hart v. Hardin*, 43 Mo. 171. The lessees having by their conduct and payment of rent, waived any objection as to the refusal to give full possession of the premises, such waiver also bound the sureties. *Ross v. Woodville*, 3 Munf. 324; *Com'r v. Ex's*, 1 Bailey (S. C.) 151; *Lillard v. Rucket*, 9 J. Baxter 568; *Dillingham v. Jenkins*, 7 S. & M. (Miss.) 486; *Benjamin v. Hilliard*, 23 How. (U. S.) 149. The alleged release of John Kiso not being under seal, was not binding. *McAllister v. Dennin*, 27 Mo. 40. The facts in the case fail to show a surrender of the original term of the lease by operation of law, and in the absence of such surrender both lessees continued liable for the rent. *Schieffelen v. Carpenter*, 15 Wend. 400; *Whitney v. Meyers*, 1 Duer 267; *Coe v. Hobby*, 72 N. Y. 145, 146; *Hunt v. Gardner*, 39 N. J. L. 530; *Slocum v. Brown*, 5 Cranch. C. C. 315; *Auriol v. Mills*, 4 D. & E. 94; *Brewer v. Dyer*, 7 Cush. 339. The lease and surety instrument, as they were executed on the same day, and the latter refers to the former, should be construed together, and as one instrument. *Noel v. Gaines*, 68 Mo. 653. As was said in *Speck v. Riggin*, 40 Mo. 405, a party is as much estopped by giving a matter in evidence, as by pleading it, and John Kiso's own testimony disproves any intention on his part to surrender the original lease, for he said: "After Herman's death, I came down to take the mill; I thought I had to run the mill; knew my name was on the lease and on the bond; went to see about things,

and tried to rent the mill from the administrator ; thought I was entitled to the possession." The alleged assignment by Herman Kiso to John Kiso of his interest in the lease being for a greater term than one year, was void under the statute of frauds, and the assignment to Herman being invalid, no surrender took place. *Schieffelen v. Carpenter*, 15 Wend. 450 ; *Coe v. Hobby*, 72 N. Y. 147; *Mollet v. Brayne*, 2 Camp. 104. Defendants' fifth instruction was wrong, because it permitted the jury to fix the rent at a different price than that stipulated in the lease, which could not be done in view of the retention of the premises for fifteen months and the settlement had. *Crommelin v. Theiss*, and authorities *supra*. The lease was to the two Kisos jointly, and the occupation of one was that of both. *Kendall v. Garland*, 5 Cush. 75. Conceding there was a surrender of the original term, it did not operate to release either John Kiso or the sureties from any rent accruing prior to the surrender. *Kingsbury v. Woodfall*, 61 N. Y. 356.

*J. E. Belch* for defendants in error.

The petition alleges that the cause of action is based on the bond, which is filed with the petition, and this is the most natural construction of the petition, because it is well settled in this State that the maker and guarantor of an instrument cannot be sued jointly in the same action, and to hold that both instruments are sued on would make a bad petition and a misjoinder of parties. *Parmerlee v. Williams*, 71 Mo. 410 ; *Graham v. Ringo*, 67 Mo. 324; *Central Sav. Bank v. Shine*, 48 Mo. *loc cit.* 463. Appellant has no cause to complain of the manner in which the trial court submitted his part of the case to the jury, for he got the full benefit of his own theory, divested of all questions or qualifications affecting the defense. The surety defendants only guaranteed the performance of the contract as it existed when they executed the instrument in suit. Brandt on Sur. and Guar., §§ 338, 345; Baylies Sur. and Guar.,

pp. 260, 297; *Farras v. Kramer*, 6 Mo. App. 167. The contract guaranteed by the sureties, was to be performed on the premises by two persons, and if plaintiff consented to or caused one of them to retire, so that only one was left to perform the contract, there was a material alteration of and departure from the original contract, and if a breach occurred under the circumstances, the sureties are not liable. *Penn v. Collins*, 5 Rob. (La.) 213.

PHILIPS, C.—In September, 1872, the plaintiff leased to John and Herman Kiso, for a term of five years, certain premises in Osage county, consisting of a grist and saw-mill, a farm appurtenant, with blacksmith shop and ferry over the Gasconade river. Plaintiff was to put the lessees in possession on October 1st, following. Plaintiff was to make certain repairs, and was to pay the defendants for the same in case he neglected it, etc. Defendants were to pay a rental of $2,000 a year, payable quarterly, beginning on the first day of January, 1873.

On the same day the defendants, on another paper, executed the following instrument of writing: " We, the undersigned as principal and sureties, do bind ourselves in the sum of $20,000, recoverable by George W. Prior, for the rent of his mills and farm, as designated between George W. Prior and Herman and John Kiso, in an article designated by both parties; the object of this is to secure the rent and delivery of the mills and farm in good order and condition." This surety contract was executed pursuant to a stipulation providing therefor in said contract of lease. Both the lease and collateral undertaking, were under seal. The petition filed herein by Prior, sets out said lease and the undertaking of defendants as sureties or guarantors, and alleges that the Kisos took possession of the leased premises at the time designated in the contract, and continued therein for fifteen months, making certain repairs, which discharged the rents for that time, except the sum of $20, which they paid in cash. That at the end

of fifreen months, he and the Kisos had a full settlement of all matters between them touching said lease, which was final and conclusive; that in the month of June, 1875, Herman Kiso died intestate, after which time John and the administrator of said Herman, continued to hold the premises, until the 1st of December, 1875, but failed to pay said rent, as stipulated in the contract, leaving a balance due plaintiff of $3,625. This action is brought against the defendants on said guaranty to recover said balance and interest.

The defendant John Kiso, filed separate answer, charging: "1. That plaintiff failed to comply with the conditions of his contract, and refused and failed to deliver full and complete possession of the premises, farm and mill to defendant and Herman Kiso, but kept for himself and family, full and exclusive possession of the dwelling house and part of the mill and buildings, to the great damage and annoyance of defendant and Herman Kiso.

"2. That at the time of making the lease, John and H. Kiso had formed a partnership for the purpose of running the mill and farm mentioned in the lease, as the plaintiff at the time well knew, and that said lease was really made to said John and H. Kiso as partners, and that they so ran the mill and farm as partners from the beginning of said lease, until February 2nd, 1874; that by reason of plaintiff's failure to deliver full possession of the premises, the defendants refused to keep the same under the lease, and refused to remain in said partnership, and that on February 2nd, 1874, said partnership was wholly dissolved by mutual consent, and the defendant (John Kiso) then and there for valuable consideration, sold and conveyed all his rights and interest in the lease to H. Kiso, with full knowledge and consent of plaintiff, and from said last date, H. Kiso had, and held the exclusive possession of all the leased premises, except as heretofore stated, and from that time until the delivery of said premises on December 1st, 1875, (was) solely responsible to said plaintiff, and (was), by plaintiff,

held as solely and exclusively responsible; and said partnership was fully dissolved and defendant released from all liabilities created by said lease on February 2nd, 1874, with full knowledge and consent of the plaintiff.

" 3.   Admits that said H. Kiso, after his death, by his representatives, continued in possession of the premises till December 1st, 1875, but denies that the defendant from and after February 2nd, 1874, was ever in possession of the leased premises, but that after the last date, and that of the dissolution of the partnership, H. Kiso had the sole possession, and was solely liable for the rent, and this defendant denies that there was a failure to pay rent quarterly, or at any other time, but says, that all rent due plaintiff, has been fully paid and discharged, and that nothing is due plaintiff therefor, by this defendant or any one else."

The other defendants answered jointly.   The material averments of their answer are as follows:

" 2.   That they executed the instrument sued on as securities for H. and J. Kiso, then being partners, and leased said property in partnership and for the purpose of carrying on the partnership business of milling, farming, etc., as co-partners, which was at the time known to the plaintiff; that the undertaking of defendants was that of securities for the rent reserved in the contract of lease of plaintiff to the Kisos, but that said contract was never complied with by plaintiff; that plaintiff refused to deliver up all the premises so leased to the Kisos, and that the latter never entered on the premises under the terms of the lease; that afterward the Kisos, by agreement with plaintiff, entered into a part of said premises, and plaintiff kept possession of a part thereof, and that by said action of plaintiff and the Kisos, the contract was materially altered and changed, in that the Kisos accepted of and from plaintiff a smaller portion of said premises, all of which was without the knowledge and consent of these defendants, by which action they were released from any liability on the writing signed by them.

"3. That after the execution of the instrument sued on, and on February 2nd, 1874, the partnership between the Kisos was dissolved, and by the terms of the dissolution H. Kiso kept and retained all the property theretofore held by them and belonging to plaintiff, and H. Kiso agreed to pay all the partnership debts, including rent of said property; that plaintiff knew of the dissolution and the terms of the contract between the Kisos, and approved, consented and acquiesced therein, and afterward kept and did all business and things pertaining to said leased property, and treated and dealt with Herman Kiso as the sole owner of said lease, and whereby plaintiff then and there released said John Kiso, and that by this act in releasing him, these defendants, as securities for the said Kisos, are released and discharged from all liability created by the writing sued on for any debt after the dissolution

"4. That the plaintiff voluntarily released James Mc-Cannan and J. H. Kidd from all liability as co-partners on the instrument sued on, by which defendants were discharged from any liability to the extent of two-tenths of any supposed interest therein.

"6. That after the death of H. Kiso his representatives continued in possession of the premises and retained sole control thereof to December 1st, 1875, at which date, pursuant to an agreement made between plaintiff, the defendant, John Kiso, and the legal representatives of H. Kiso, the said legal representatives of H. Kiso released to said plaintiff the possession of the leased premises prior to the expiration of the term for which the same were leased, and plaintiff then and there agreed to look to said defendant, John Kiso, alone for the payment of the rent due, and to release H. Kiso's estate from any liability for the same, by which said action of said parties to the original contract of lease and their legal representatives, the said original contract was entirely abrogated, and the defendants released from any and all liability incurred from and in pursuance thereof."

Evidence was introduced by both parties tending to sustain the respective issues. A great number of instructions were asked and given on both sides, many of them as usual in such trials, wholly unnecessary and repetitions of each other. They will be noticed, so far as needful, in the course of this opinion. The jury found the issues for the defendants, and the plaintiff has brought the case here on appeal.

I.   We will dispose of the objection at the outset, interposed by appellant, that the contract of lease being under seal, could not be changed or so modified by the parties thereto, as to operate a discharge of the sureties or the lessee, unless the substituted arrangement was in writing and under seal. The case of *McAllister v. Dennin,* 27 Mo. 40, is cited in support of this proposition. This applies to technical releases of one joint obligor to discharge his co-obligor. It has no application to the issue here involved. A lease under seal may be surrendered or changed by subsequent contract by parol, or writing, under seal or without seal. *Randall v. Rich,* 11 Mass. 493; *Matthews v. Tobener,* 39 Mo. 115; *Hutchinson v. Jones,* 79 Mo. 496. "What will amount to a surrender is often a question which may be presumed from facts. An actual and continued change of possession, by the mutual consent of the parties, will be taken as a surrender, by operation of law, whether the possession is delivered to the landlord himself or to another." It would be grossly inequitable for the lessor, after he has consented for the lessee to quit and look to another for the rents, to return to his compact, when he should afterward fail to collect from him whom he accepted as tenant instead. Especially does the doctrine apply to the case of the sureties whose security is lessened by the act of the lessor in permitting the principal to go out. He would be estopped from holding them to the letter of a contract which he had assented might be waived, without their consent.

II.   The appellant treats the action as if founded on both the contract of lease and that of the sureties. The con-

tract of the sureties is evidenced by a separate instrument, and is collateral to the contract of lease. By its express terms, its object "is, to secure the rent and delivery of mills and farm in good condition." Its purpose is limited by its own terms, and the sureties would not be liable to any action for any other incident of the contract of lease. The general doctrine is, that the contract of the guarantor, being independent of and auxiliary to that of the principal, he cannot be joined in the same action against the principal. *Cent. Sav. Bank v. Shine*, 48 Mo. 463, 464; *Graham v. Ringo*, 67 Mo. 324; *Parmerlee v. Williams*, 71 Mo. 410. John Kiso, being a party to both the contract of lease and surety, was well joined in the action on the latter undertaking. This complication renders it difficult to determine whether the undertaking of defendants be strictly one of guarantors or sureties. But treating them as mere sureties, (a view more favorable to the appellant) obligated by a collateral contract, will not affect the principles involved in the decision of the case. As sureties, the defendants, other than John Kiso, had certain rights and privileges under the law, which it was not in the power of the parties to the contract of lease to abridge or imperil. They are very justly the favorites of the law.

As C. J. Kent, in *Ludlow v. Simond*, 2 Caines Cases in Error, p. 57, says: "It is a well settled rule, both at law and in equity, that a surety is not to be held beyond the *precise terms* of his contract, and except in certain cases of accident, mistake or fraud, a court of equity will never lend its aid to fix a surety beyond what he is fairly bound to at law. This rule is founded upon the most cogent and salutary principles of public policy and justice. In the complicated transactions of civil life, the aid of one friend to another, in the character of surety or bail, becomes requisite at every step. Without these acts of mutual kindness and assistance, the course of business and commerce would be prodigiously impeded and disturbed. It then becomes excessively important to have the rule estab-

lished, that a surety is never to be implicated, beyond his specific engagement. Calculating upon the exact extent of that engagement, and having no interest or concern in the subject matter for which he is surety, he is not to be supposed to bestow his attention to the transaction, and is only to be prepared to meet the contingency, when it shall arise, in the time and mode prescribed in the contract. The creditor has no right to *increase his risks* without his consent; and cannot, therefore, *vary the original contract*, for that might vary the risk."

" To charge him beyond the terms, or to permit it to be altered without his consent, would be, not to enforce the contract made by him, but to make another for him." Brandt on Suretyship, § 79, 80. It is not for the creditor, or the principal to say the change or modification made, will probably enure to the benefit of the surety, or add to his protection. He has a right to say, when called on by the creditor: *In hoc foedere non veni*, I come not to this compact. *State ex rel. v. Boon*, 44 Mo. 262. Whatever act of the creditor, done without the assent of the surety, which tends to enlarge or diminish the terms of the contract, to increase the surety's liability, or the hazard of his risk, in any material particular, will discharge him.

The undertaking of the sureties here, was to answer for the debt and act of two parties jointly as lessees. It was not for one alone. The law presumes that the inducement of the surety to stand for the rent was based upon the character and husbandry of both parties; and that the obligation would not have been executed for one alone. If without the consent of the sureties, Prior consented for John Kiso to quit the premises, and for Herman to continue, looking to Herman for the rent, that discharged the sureties. *State ex rel. v. Boon, supra; Blair v. Perpet. Ins. Co.*, 10 Mo. 566.

There was evidence, both direct and circumstantial, to show that John Kiso did retire from the premises with the knowledge and assent of Prior, and that he treated with

Herman Kiso and his administrator afterward, as if they were the sole parties in interest. This issue, we think, was fairly and with sufficient clearness, submitted to the jury in the instructions. There was some conflict of testimony as to the detention by Prior from the lessees of certain portions of the demised premises, and as to whether the parts retained were material. We may concede to the appellant that, unless the portion thus withheld had some practical value, and bore upon the responsibility of the sureties as affecting the character and extent of their security, the maxim might be applied; *de minimis lex non curat*. And some of the instructions given in behalf of the defendants did not, perhaps, sufficiently present to the jury the consideration of the materiality of all the portions of the property so withheld. But, we are relieved from the necessity of going into details, because it appears from the evidence introduced by the plaintiff, and uncontradicted, that "Prior put a fence over on the Kiso side, on the northwest corner; this was accounted for in the settlement had between Prior and the Kisos the 1st of January, 1874. The field next the ferry, which Prior kept, was sold back to him by H. Kiso." So it affirmatively appears from the plaintiff's side, undenied or uncontradicted by the other, that after the contract assumed by the defendant sureties, Prior, by arrangement between him and the Kisos, or one of them, bought back from the lessees a material portion of the demised premises. It was material, confessedly by his own act, in *buying* it back. Thus was a part of the land leased, which was a part of the security the sureties had when they executed the collateral undertaking, returned to the lessor. There was no evidence of their assent, but on the contrary, they testified it was unauthorized by them. The injustice of this arrangement becomes patent in view of the fact, that the lessor after taking back a part of the premises, is now suing the sureties for the full rent of the whole, as expressed in the original lease. It is no answer to say that he paid the Kisos for the land taken back. The money in their pocket was no

security to the guarantors, as the land itself was. *Penn v. Collins*, 5 Rob. (La.) 213; *Bethune v. Dozier*, 10 Ga. 235; Brandt on Suretyship, §§ 338, 345.

On this proof, made by the plaintiff, the defendant sureties were entitled to an instruction directing the jury to find for them. Instead of this, however, the court instructed the jury, "that the fact that John and Herman Kiso sold to the plaintiff a portion of the land leased to them, is no defense for any of the defendants in this action." This was error committed against the surety defendants. Superadded to which is the further undisputed fact, that when the lease, under the terms of the contract, had more than a year thereafter to run, the plaintiff took back the whole premises, and held them thereafter. There was no evidence that the sureties consented to this. That fact released them also.

The judgment should be affirmed, if there was no error committed by the court in the instructions given affecting the right of recovery against the defendant, John Kiso, who was a principal in the contract. Among the instructions given on the behalf of the defendants, are the following :

"If the jury believe from the evidence that John C. Kiso and Herman Kiso jointly leased the mills and farm of the plaintiff, as stated in plaintiff's petition, and that plaintiff failed to deliver all the lands and tenements, as agreed in his contract of lease, to the said John Kiso and Herman Kiso; and you further find from the evidence that the defendant, John C. Kiso, by reason of such non-compliance with the terms of the contract by the plaintiff, left said mill and premises and refused to keep the part of the lands and premises delivered, and that Herman Kiso then kept sole possession of said premises, or any part thereof, then the jury must find for the defendants."

"If the jury believe from the evidence that the plaintiff retained the possession, use and occupation of any part of the premises leased to Herman Kiso and John Kiso, with-

out the consent of John Kiso, and that by reason of said detention John Kiso severed his connection with the business conducted under that lease, and gave up all interest therein, then the defendants in this action are released, and the jury will find for the defendants."

It is manifest that under these instruction, particularly the last, the jury were authorized to find for Kiso, if any part of the demised premises were withheld without his consent at the time, during the tenancy. In the first part of his answer he admitted, among other things, that "he and Herman entered into possession under the contract of lease with plaintiff, * * and that under said contract they entered into the possession of said premises, mill and farm, except as afterward in the answer stated, did the work and labor, and paid the rent for fifteen months, as alleged in the petition." The complaint in the succeeding part of the answer is, that he did not get possession of the entire property, and quit on account thereof, and by consent of plaintiff. Now, this is an admission, in legal effect, that he accepted the possession of a part of the premises, at least, and held them with Herman for fifteen months when the settlement was made. Having accepted less than what he was entitled to demand under his contract, and held the part for fifteen months, was sufficient to have authorized the jury to find that he had waived full performance on the part of the lessor. And if, in fact, he only obtained a part, without assenting to the withholding of the residue, the plaintiff could only recover from him *pro tanto*, for the portion he took. This is the law and equity of the matter. If Prior agreed to let him off after the settlement at the end of the fifteen months, as alleged, that, of course, would authorize a verdict for him. Whether such was the fact, was for the jury to determine from all the facts and circumstances in evidence.

The judgment of the circuit court is, therefore, reversed and the cause remanded, for further proceeding in

conformity with this opinion.  MARTIN, C., concurs; EWING, C., not sitting, having been of counsel.  SHERWOOD and NORTON, JJ., absent.