JOHN SMITH, Respondent, v. GEORGE THURSTON ET AL., Appellants.

Kansas City Court of Appeals, October 26, 1885.

1. CONTRACT OF LEASE—PRINCIPAL AND SURETY—RELEASE OF SURETIES.—If the tenant be at any time deprived of the premises by the landlord's agency, the obligation to pay rent ceases, because his obligation has force only from the consideration, which, is the enjoyment of the premises. And sureties who contract for the payment of rent by a lessee, are discharged by an eviction of the lessee from the possession, brought about and continued by fraud and collusion between the lessor and their principal. Following *Prior v. Kiso,* 81 Mo. 241.

2. —— EVICTION FROM FAULT OF LESSEE.—But if the lessee, by breach of the express and implied terms of the lease compels the lessor to interfere, even to his expulsion, should that be necessary to preserve the estate, will not bar the obligation to pay the rent agreed. And if the want of a quiet possession is attributable solely to the lessee, the obligation to pay rent can be enforced against the lessee and his sureties.

APPEAL from Livingston Circuit Court, HON. JAMES M. DAVIS, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is a suit on a note brought in the Livingston circuit court and tried upon plaintiff's first amended petition, as follows:

"Plaintiff for his first amended petition in this cause states that defendants, George Thurston, under the name of G. Thurston, Francis E. Coffee, under the name of F. E. Coffee, Reuben T. Miller, under the name of R. T. Miller, Andrew W. Kapp, under the name of A. W. Kapp, Stephen W. Baugh, under the name of S. W. Baugh, James S. Stevens, under the name of Jas. S. Stevens, Andrew Y. Swope, under the name of A. Y. Swope, Jacob E. Riley, under the name of J. E. Riley, James W. Maberry, under the name of J. W. Maberry, Samuel H. Skinner, under the name of S. H. Skinner, William L. K. Meek, under the name of W. L. K. Meek, Thomas B. France, under the name of T. B. France, and Silas H. Bagley, under the name of Silas H. Bagley, by their promissory note filed with the original petition in this cause, dated on the fifteenth day of April, 1881, for value received, promise to pay plaintiff the sum of three hundred and sixty-six dollars and sixty-six cents ($366$\frac{66}{100}$), eleven months after the date thereof, with ten per cent. interest thereon from date, payable in eleven monthly instalments on the fifteenth day of each month, the first paymet to be made on the fifteenth day of May, 1881. That defendants on the

fifteenth day of May, 1881, paid $36$\frac{38}{100}$ on said note, and on the fifteenth day of June, 1881, paid $36$\frac{10}{100}$, and on the fifteenth day of July, 1881, paid $35$\frac{80}{100}$. Which payments have been entered as credits on said note. That each and all of the remaining payments are now due and unpaid, for which plaintiff prays judgment together with his interest due thereon and costs of suit."

Defendant's second amended answer, upon which said cause was tried, is as follows :

"All the defendants, except George Thurston, who is not joined therein, for their second amended answer to the amended petition of plaintiff herein, say that in the note filed by plaintiff and sued upon herein, the said George Thurston was and is the principal, and that all these defendants answering herein were his sureties to plaintiff, and that plaintiff at the time of the delivery of said note well knew of this relation. That the consideration of said note has wholly failed in this, to-wit: that it was given to plaintiff as the consideration of a lease by him to said George Thurston, of a certain steam grist mill and appurtenances, situate on block number five in the town of Avalon, in Livingston county, state of Missouri, for the term of one year ending on the fifteenth day of April, 1882. That the rent of said mill was fully paid by said Thurston, to plaintiff up to August 20, 1881, but that plaintiff on August 6, 1881, entered into and upon the said mill property said demised as aforesaid to said George Thurston and ejected, expelled, put out, and amoved him from possession thereof, and has wholly kept and continued him ejected, expelled, put out, and amoved from the possession of demised mill property up to the present time; which eviction defendants herein plead and aver that the same constitutes a failure in law and in fact of the consideration of the entire balance due upon the note sued upon."

And for second defence these defendants answering therein say: "That in said note George Thurston, who does not answer herein, was and is the principal, and that all the defendants herein were and are only his sureties.

That the plaintiff at the time of accepting and taking
said note well knew of this relation between the said
Thurston and these defendants. That plaintiff was the
owner of a steam grist mill located upon block number
five in the town of Avalon, in Livingston county, state
of Missouri. That said mill was lying idle, to the great
detriment of the business of said town. That these de-
fendants were all either citizens of Avalon or interested
pecuniarily in its prosperity, and were and are solvent.
That said Thurston was insolvent, and the plaintiff
would not and did not rent said mill, without surety, to
said Thurston, which plaintiff did by a written lease for
one year, from April 15, 1881, to April 15, 1882. That
said Thurston paid him one month's rent cash in advance,
and gave the note sued upon with these defendants as his
sureties for the balance of the rent, to-wit: for $366.66.
That afterwards, to-wit, on August 6, 1881, plaintiff ob-
tained from the judge of this court on his petition there-
for, a temporary injunction restraining said Thurston
from using and running said mill. That at said date the
rent for said mill was fully paid up and discharged. That
said injunction upon the part of plaintiff was malicious
and vexatious and without just cause, in fact. That said
Thurston was possessed in law and in fact of a good
defence to the same, and that he filed his answer to said
petition for an injunction and asked that the same might
be dissolved and the petition dismissed. That none of
the defendants herein were parties or made so to said
injunction, but these defendants charge and aver the fact
to be that plaintiff, after the filing of the answer of said
Thurston, well knowing that he could not maintain his
cause of action and have his temporary injunction made
final if the same was fought in good faith by said
Thurston, proposed to, and conspired and collogued with
him, the said Thurston, and for the purpose of cheating
and defrauding these defendants, the sureties as aforesaid
of said Thurston, that if he, the said Thurston, would
withdraw his answer in the said injunction case and
permit him, plaintiff, to have his temporary injunction

restraining said Thurston from running and using said
mill, made final in the case, he would pay him, Thurston,
the sum of one hundred dollars.   That said Thurston ac-
cepted plaintiff's proposal and did withdraw his answer,
and thereupon plaintiff paid said Thurston the one
hundred dollars, and procured this court to make said
temporary injunction final.   That said Thurston left this
part of the country and plaintiff thereupon filed this
suit and seeks to make these defendants liable upon said
note.   Defendants say, that by reason of the collusion
and fraud between their principal, the said Thurston
and plaintiff as herein set forth, they are released from
all obligation and legal liability thereon; and that to
hold them responsible to plaintiff after his collusion
with their principal, would be to make them victims of
plaintiff's fraud and chicanery as herein set forth, and
ask to be discharged."

Now comes the plaintiff and for his reply to the second
amended answer of defendants:   Denies each and every
allegation in the first count thereof.   Denies each and
every allegation in the second count thereof.

On April 15, 1881, plaintiff leased by written lease
the "Avalon Mills" in Livingston county, to Thurston,
for the year ending April 15, 1882, for $400.00 payable
monthly, the first month being paid in advance, and
the note in suit, with defendants as sureties, being
given to plaintiff for the balance.   On August 6, 1881,
the plaintiff, by bill temporarily enjoined Thurston
from operating the mill.   This injunction was made
perpetual at the following September term of the circuit
court.   Thurston having withdrawn his answer, permitted
the injunction to be made perpetual without resistance.
The rent was paid up to August 20, 1881.   The evidence
tended to show that plaintiff asked several of the de-
fendants to assist him in obtaining possession of the
mill from Thurston.   That Thurston did not run the
mill after the service of the temporary injunction on
August 6, 1881.   Defendant's evidence further tended
to show that plaintiff paid Thurston $100.00 to withdraw

his answer and let judgment go by default, making the injunction perpetual and to surrender up possession of the mill.

The court gave for plaintiff the following instruction:

"The court instructs the jury that under the pleadings and evidence in this case, they will find for plaintiff on said note for the amount which would be due the plaintiff from the twentieth day of August, 1881, to the first day of February, 1882, with ten per cent. interest thereon."

The defendants then asked the following instructions all of which were refused, except the first, which was given.

"1. The court instructs the jury that in all cases of leasing of property, the quiet enjoyment of the leased or rented premises without any molestation on the part of the landlord is an implied condition on which the tenant is only bound to pay the rent."

"2. The court instructs the jury that if they shall believe from the evidence that these defendants stand, upon the note sued upon, in the relation of sureties for one George Thurston, who is not sued herein and that such relation was known to plaintiff, and shall further believe that the note sued upon was given as part consideration of the renting of a steam mill in Avalon, Missouri, to said Thurston by plaintiff, for one year ending April 15, 1882; that on August 6, 1882, plaintiff obtained temporary writ of injunction against the said Thurston, restraining him from using said mill; that said Thurston put in an answer to said injunction, and was proceeding to contest said injunction, and fight the same in due form of law, when an agreement, without the knowledge or consent of these defendants was made between plaintiff and said Thurston; that plaintiff would give Thurston one hundred dollars if he would withdraw his answer and let plaintiff obtain a decree from the court, making his injunction final and give up possession of said mill; that said agreement was fully consummated upon both sides, then such

agreement was a fraud upon the rights of these defend-
ants, and is in law a rescission of the note sued upon, and
the verdict must be for defendants."

"3. The jury are instructed that an eviction by
the landlord does not necessarily mean an actual physical
expulsion from the leased premises, but an interference
on the part of the landlord, whether legal or illegal, with
the tenant's beneficial and quiet enjoyment of the de-
mised or rented property, will amount to an eviction in
law. If, therefore, the jury shall believe that the note
sued upon was given by one Thurston as principal, and
the defendants in this action as his sureties, as part
consideration for the rental of a certain steam mill and
premises at Avalon, Missouri, leased by plaintiff to
George Thurston; that on August 6, 1881, plaintiff
obtained a temporary injunction from the judge of
the seventeenth judicial circuit of Missouri, restraining
said Thurston from any use of said mill, which tem-
porary writ was afterwards made final by the circuit
court of this, Livingston, county, then said injunction
in law was an eviction of the principal of these de-
fendants from said mill property, and the jury will find
for the defendant; provided they shall find that on said
August 6, 1881, when said temporary writ of injunc-
tion was granted, that all rent then due and payable
to plaintiff had been fully paid."

"4. That if the jury believe that John Smith
made an agreement with the principal, George Thurston,
in this note sued on, that said Thurston would with-
draw his answer in the injunction suit and that Smith
would pay one hundred dollars to said Thurston,
and that said Smith made such agreement for the pur-
pose of getting possession of said mill, and that such
agreement was consummated, then such agreement was
a rescission of the contract and relates back to the sixth
of August, 1881, the time that the injunction was served
upon Thurston."

The verdict was for plaintiff and the defendants
appeal.

R. R. KITT and C. H. MANSUR, for the appellants.

I. The lessee (Thurston) was evicted by the injunction order prayed for and obtained by the lessor. Taylor, Landlord and Tenant (6 Ed.) sects. 304, 378; Wood's Landlord·and Tenant, 564; *Jackson v. Eddy*, 12 Mo. 212; *Lawrence v. French*, 25 Wendell 445; *Hayner v. Smith*, 63 Illinois 430; *Edgerton v. Page*, 20 N. Y. 281.

II. The change in law of the contract of the sureties, whereby they were held by the judgment below to pay the note, when the consideration thereof, to-wit: "the running and operation of the mill," had failed by reason of the restraining order of the court below, discharged the sureties, viz: (1) by the fraud and collusion between their principal and the lessor, and (2) because of the non-compliance with the terms upon which they signed the note, which operates legally as a change of their contract. Brandt ·on Sureties, section 361. *Elliott v. Boaz*, 13 Ala. 535; *Trustees v. Miller*, 3 Ohio 261; *Ritter v. Democratic, Press Co.*, 68 Mo. 458.

III. The withdrawal of his answer, and the abandonment of the injunction suit by the lessee (Thurston), the principal and insolvent for one hundred dollars paid him by the lessor, shows collusion, and operates as a fraud upon his sureties, the defendants.

IV. The conduct of the lessee and lessor, taken with the payment and acceptance of the one hundred dollars, was a total rescission of the contract; and not a partial one, as it was evidently considered by the court below. 2 Wait's Actions and Defences, 483.

V. When the terms upon which a surety signs have not been complied with, whether benefited or injured, he is no longer liable upon his contract as surety. *Lynch v. Callgate*, 2 How. and Johns. (Md.) 34; *Hawkins v. Humble*, 5 Colder (Tenn.) 531; *Elliott v. Boaz*, 13 Ala. 535; *Prior v. Kiso*, 81 Mo. 241.

WYNNE, DAVIS & BROADDUS, for the respondent.

I. The injunction proceedings for the purposes of

this case, must be held as properly taken as they stand unreversed. The judgment is conclusive upon Thurston and his privies, and can only be attacked in a direct proceeding for that purpose. Smith's action in obtaining it was not a wrongful interference with the peaceful enjoyment of the leased premises by the lessee. *State ex rel., etc., v. O'Gorman*, 75 Mo. 370; *Cooley v. Warren*, 53 Mo. 166; 1 Greenl. Evid., sect. 523.

II.   There is no evidence showing that the possession was obtained unduly, or by fraud, or by collusion; but was obtained openly and in the interest of peace, to quiet litigation; besides the lessee was operating the mill to the detriment of the machinery and was otherwise injuring the leased premises. The evidence shows that Thurston did not abandon the possession by reason of the injunction.

III.   There *was no eviction.* There must be *two* things concurring in order to constitute an eviction, viz.: (1) Some wrongful act on the part of the lessor which interferes with the peaceable enjoyment of the leased premises by the lessee, and (2) an abandonment thereof in consequence of such wrongful act of lessor. *Jackson v. Eddy*, 12 Mo. 212; *Hovelen v. Fleming*, 9 Rep. 23; *Doran v. Chase*, 2 Reporter 195; *Dyett v. Pendleton*, 8 Cowan 728.

IV.   There is no element of rescission in this case. *Melton v. Smith*, 65 Mo. 324.

V.   The facts in this case are not like those in case of *Prior v. Kiso* (81 Mo. 241). There the lessor had released one of the lessees, had retained possession of part of the premises and cancelled the contract as to part of the same. Here the note in suit is for the payment of certain sums of money and all are *principals*, though it is true that appellants were in fact sureties, and that the rent of the mills was the consideration for the note.

Ellison, J.—I regard this case as being directly controlled by that of *Prior v. Kiso*, 81 Mo. 241. There was evidence in this case tending to show

that plaintiff agreed to pay to Thurston one hundred dollars if he would withdraw his answer and make no defence to the injunction. Plaintiff's proposition was accepted and the answer of Thurston was withdrawn, and judgment taken against him by default, the one hundred dollars having been paid by plaintiff.

Here, then, when the lease had yet to run from the September term of the circuit court till April 15, following, plaintiff, by bargain with the principal in the note, without the knowledge or consent of these defendants took back the premises. Judge Philips, in the case referred to in speaking of the release of the securities for the payment of rent by the act of the lessor, says: "So it affirmatively appears from the plaintiff's side, undenied or uncontradicted by the other, that the contract assumed by the defendant sureties, Prior, by arrangement between him and the Kisos, or one of them, bought back from the lessees a material portion of the demised premises. It was material, confessedly, by his own act, in *buying* it back. Thus was a part of the land leased, which was a part of the security the sureties had when they executed the collateral undertaking, returned to the lessor. There was no evidence of their assent, but on the contrary, they testified it was unauthorised by them. * * * On this proof, made by the plaintiff, the defendant sureties, were entitled to an instruction to find for them. Instead of this, however, the court instructed the jury that the fact that John and Herman Kiso sold to plaintiff a portion of the land leased to them, is no defence to any of the defendants in this action. This was error committed against the surety defendants. Superadded to which is the further undisputed fact, that when the lease, under the terms of the contract, had more than a year thereafter to run, the plaintiff took back the whole premises, and held them thereafter. There was no evidence that the sureties assented to this. That fact releases them also."

For the error in giving the instruction for plaintiff the cause will be remanded for another trial. In con-

sideration of this fact we will state the views of this court on the other branches of the case as it has been tried.

Taylor on Landlord and Tenant (6 Ed.), section 304, says: "The principal covenant on the part of the landlord, is, that his tenant shall have the quiet enjoyment and possession of the premises during the continuance of the term." And again, speaking of this covenant, whether it be express or implied, says in section 305: "Any interference with the possession of the lessee, more than a mere trespass, by the lessor himself, will amount to a breach of the covenant in whatever form it may happen." Again, in section 378, he says: "The quiet enjoyment of the premises without any molestation on the part of the landlord, is an implied condition on which the tenant is bound to pay rent. Rent is something given by way of compensation to the lessor for the use of the land, and consequently the landlord's claim for rent depends upon this, that so far as he is concerned, the land is possessed and enjoyed by the tenant, during the term specified in his contract; for the tenant ought not to make a return for the thing which he has not. If, therefore, the tenant be at any time deprived of the premises by the landlord's agency, the obligation to pay rent ceases, because his obligation has force only from the consideration, which is the enjoyment of the premises."

In Wood's Landlord and Tenant, on page 564, it is declared: "Whether a lease contains a covenant for quiet enjoyment or not, is, so far as the rights of the tenant are concerned, immaterial, as, in all cases, unless otherwise expressly provided, the law will imply such a covenant. The rule is, that a covenant for quiet enjoyment is implied in every mutual contract for leasing land, by whatever form of words the agreement is made, and for the breach of such covenant, occasioned through the fault of the lessor, the lessee has his remedy for such damages as result to him therefrom."

This statement of the law is well fortified by the de-

cisions on the subject. Must it not likewise be understood and does not this statement of the doctrine pre-suppose that the lessee is doing no act whereby he would compel the lessor, in order to preserve the estate, to interfere with the quiet enjoyment? Shall it be said that a lessor must stand by and permit his lessee the quiet enjoyment of pulling down his houses, or of devastating his timber, on pain of losing his contract? If this were true, it would offer a constant inducement to every lessee weary of his lease to so conduct himself as to force the interposition of the courts by the writ of injunction. Reason would say that if the lessee, himself, by breach of the express and implied terms of the lease compels the lessor to interfere, even to his expulsion, should that be necessary to preserve the estate, will not bar the obligation to pay the rent agreed. The cases requiring the tenant to be evicted from the premises in order to save the property from irreparable injury would be rare, for, in most instances, the lessee would be merely inhibited from committing the acts complained of, or, as in this case, the injunction would be that he cease operating or using the property until it had been put in the requisite order or condition. Of course these remarks would not apply where the lessor has obtained possession of the property for any other purpose than its preservation, or should use it for his own benefit, or do other act inconsistent with the tenant's legal rights under the lease.

It is said that "the consideration of the lessee's undertaking to pay rent is the quiet, peaceable, and indisputable possession of the premises leased, and is in its nature a condition precedent to the payment of rent." *Jackson v. Eddy et al.*, 12 Mo. 209. It is not meant by this that the lessee shall actually enjoy the possession; for he may wilfully, without cause or excuse, abandon the possession, or refuse, in the first instance, to take it. So long as the lessor commits no breach of the lease and the want of a quiet, peaceable and indisputable possession is attributable solely to the lessee, the obligation to

pay rent can be enforced against the lessee and his sure-
ties. So, then, in this case the mere fact of plaintiff en-
joining Thurston will not excuse the payment of rent,
and does not work a failure of consideration. For, if
the facts alleged in the bill were true, plaintiff had a
right to interfere.

That part of defendant's instruction numbered two,
in regard to the withdrawing of Thurston's answer, and
giving up possession in consideration of the payment of
one hundred dollars, was proper. The conclusions, how-
ever, stated in the latter part, are not necessary to aid
the jury, and tend somewhat to complicate it. As to
what would be a fraud on defendants in this case, and
especially what would be required to establish a rescission
of the note, are questions that need not be put to the
jury. So with the fourth instruction ; it is not neces-
sary to conclude it with a statement that such an agree-
ment would be a rescission of the contract. It is enough
to tell the jury that if they believe the matters set forth
in the instruction, they should find for defendants. A
rescission of a contract, as understood in the law, is not
applicable to the facts in this case.

The third instruction, as framed, under the views
above expressed, was properly refused.

The judgment is reversed and the cause remanded.
All concur.