Filed Dec. 9, 1891.

---

No. 308.

THE SPRINGFIELD ENGINE AND THRESHER COMPANY
*v.* PARK.

PRINCIPAL AND SURETY.—*Security Taken by Creditor.—Ignorance of Surety. — When Surety not Released.—Answer.—*In an action against a surety on a promissory note, an answer is bad which avers that the principal on said note had executed other notes to the plaintiff, and that the plaintiff without the knowledge or consent of the surety, but before she signed the note in suit, took a chattel mortgage from the principal to secure the payment of his individual notes together with the note in controversy, the mortgage providing that upon the failure to pay any one of said notes at maturity, all of said notes should become due and collectible, etc; that the principal failed to pay one of his individual notes secured by said mortgage, at maturity, and the mortgagee, exer-

cising the option provided for in the mortgage, elected to treat all of said notes, including the note in suit, as due, and foreclosed his mortgage, the sale of the property not realizing a sum sufficient to pay off the note in controversy.

SAME.—*Collateral Agreement Between Principal and Payee.— When Surety Released.—Fraud.*—If a collateral and contemporaneous agreement entered into between the principal and payee of a note, without the knowledge of the surety on the note, in any way changes the surety's liability, the concealment operates as a fraud upon such surety and will discharge him.

SAME.—*Failure to Disclose Material Fact.—Surety.—How Affected.—Fraud.*— Before the omission to disclose a material fact by the creditor will operate as a fraud and discharge the surety, the fact must be such as in some way to affect the liability of the surety to his detriment.

SAME.—*Taking of Additional Securety by Creditor.—Effect Upon Surety.*—The mere fact that the creditor takes additional security at the time of the execution of the contract by the surety will not of itself discharge the latter, unless the additional security operates as a satisfaction of debt, or changes the liability of the surety. Where the collateral security operates as accelerating rather than delaying the remedy, the surety is not discharged.

SAME.—*Breach of Warranty.—Surety May Plead.*—In an action against a surety on a promissory note given in part payment of an engine, the surety may plead as a defence a breach of warranty of the engine, and he may do this although the principal debtor when sued upon the note did not avail himself of such defence.

From the Tipton Circuit Court.

*A. F. Shirts* and *M. Vestal,* for appellant.

*W. S. Christian, R. R. Stephenson* and *W. R. Fertig,* for appellee.

REINHARD, J.—Action on a note executed to the appellant by Horace Park, as principal, and Mary Park, the appellee, as surety. The complaint was in one paragraph, to which the appellee filed an answer in two paragraphs. To each of the paragraphs of the answer the appellant filed a demurrer, which was overruled. The plaintiff then replied in four paragraphs, and, the issues having been thus joined, there was a trial by jury. A special verdict was returned, and each party moved for judgment upon the same. There was also a motion by appellant for a *venire de novo,* and a motion for

a new trial. These motions were each overruled, and judgment was rendered on the verdict in favor of the appellee. To each of the court's rulings against it the appellant reserved a proper exception.

The first question to which our attention is directed is the overruling of the appellant's demurrer to the first and second paragraphs of the answer.

It is averred in the second paragraph that the appellee executed the note in suit as surety for Horace Park, her comaker, which was well known to the appellant at the time; that the note was signed by Horace several days before the appellee signed it, and that said Horace, at the time he signed such note, also executed other notes to the appellant and secured them all by a chattel mortgage on certain personal property in Hamilton county, •Indiana, where said Horace resided, and that the appellant accepted the mortgage and had it duly recorded within ten days from the time of its execution; that, among others, the mortgage contained the following stipulation·: "It is further expressly agreed that in case any of the notes hereby secured shall not be paid fully at the maturity thereof, then and in such case all of the notes hereby secured shall, at the option of the mortgagee, become due and collectible;" that the individual note of said Horace, so secured by said mortgage, was of even date with the note now in suit, calling for the sum of $200, payable on or before December 25th, 1887; that the appellee, when she executed the note in suit, had no knowledge whatever that the appellant had or intended to take a mortgage of any kind whatever, or of the character and containing the agreement aforesaid in relation to the nonpayment of said notes, and never consented or agreed that said notes should become due and collectible in any manner other than that provided for on the face thereof; that after the maturity of said Horace's individual note, on the 25th day of December, 1887, and the same remaining unpaid, the plaintiff did, on the 15th day of October, 1888, elect, under

said agreement contained in said mortgage, to treat all of said mortgage notes as due and collectible, and filed its complaint and proceeded to foreclose its chattel mortgage, resulting in a personal judgment against said Horace for the total amount of all said notes, including the one in suit, and another upon which the appellee was surety, and a decree of foreclosure of the mortgage and an order of sale for the property and the subsequent sale of such property by virtue of such judgment and decree. Wherefore, etc.

It is very plain that in this paragraph of the answer the pleader attempts to set up the concealment of a fact amounting to fraud, though the appellee's counsel, in their brief, deny having any such object in view. If such concealment has the effect of discharging the surety it can only be upon the ground of fraud; if it does not amount to this, it is no defence.

The appellant contends that the gist of this answer is a change in the contract after it was made; but the facts pleaded do not show that the contract was in any manner changed or modified after the appellee signed the note, and if the terms of the contract were at any time made different from those stipulated in the note which appellee signed, it was done before such signing took place. But the facts alleged in this paragraph do show that at the time of the execution of the note by the surety there existed between the principal debtor and the appellant another contract, in the form of a chattel mortgage, by virtue of which, in certain contingencies the note which appellee signed was to become due earlier, as against the principal, than the time at which the maturity was fixed in the note itself; and that this contingency actually happened before the time the note became due as to the surety, and the payee, taking advantage of the provisions of his collateral agreement with the principal, elected to treat the note as due, and took judgment thereon against such principal.

If this collateral and contemporaneous agreement between

the principal and payee of the note, of which it is alleged the surety was ignorant, in any way changed the surety's liability, the concealment operates as a fraud upon such surety, and will discharge her; for it is a well-known rule of equity jurisprudence that if the creditor conceals from one about to become a surety any material fact whereby his risk is increased, and suffers the surety to enter into the contract under a false impression as to the real state of facts, such concealment will amount to a fraud, and will release the surety. 1 Story Eq. sec. 215; *Wilson* v. *Town of Monticello*, 85 Ind. 10; *Franklin Bank* v. *Cooper*, 36 Maine, 179; Brandt Suretyship, etc., section 366; 9 Am. & Eng. Encyc. of Law, 80 *et seq.;* De Colyar Guarantees,etc., 360.

The facts alleged in this paragraph show that there was an option clause in the chattel mortgage, by virtue of which the notes, if any one of them was not paid when due, might, at the volition of the payee, all become due at once. It is alleged that this fact was unknown to the appellee. If the appellant had not sued upon the notes prior to their maturity as against the surety, we presume it would hardly be claimed that anything had occurred which would operate as a discharge of the surety.

The question is whether the exercise of this option, and taking a judgment against the principal prior to the time when the surety's liability accrued on the note, rendered the original transaction of such a character as to taint it with fraud.

The mere fact that the creditor takes additional security at the time of the execution of the contract by the surety will not of itself discharge the latter, unless the additional security operates as a satisfaction of the debt or changes the liability of the surety. Pittman Prin. and Surety, 201; Brandt Suretyship, etc., sections 320, 321; *Morga* v. *Martien*, 32 Mo. 438.

In the case just cited the creditor, after the execution of

the contract by the surety, took from the principal debtor a deed of trust for the debt, made to certain trustees for the creditor and others. The conditions of the deed were that if any of the notes became due and remained unpaid for thirty days, then all the notes should become due, and payable as though due by the face thereof, etc. Some of the notes were signed by the principal alone. The surety on the note sued upon, by his answer, claimed there was a change of contract to his prejudice and without his knowledge or consent, denied any consent to the execution of the deed of trust, by which the contract embraced in the note sued on was changed, and asked to be relieved from further liability. In the trial court it was adjudged that the surety, by virtue of the new contract evidenced by the deed of trust, was released. The creditor, appealed, and the Supreme Court, in discussing the question, say : " There is no clause or covenant in the deed from which it can be inferred that the parties intended that it should operate as an extinguishment of the original contract, or should in anywise enlarge or diminish the liability of either party to such original contract. On the contrary, it is manifest that the deed was merely collateral, and intended as an additional and further security. So far from affecting the rights or remedies of the surety, it enures to his benefit. The object of the provision in the deed making certain notes mature upon the contingency expressed, was to enable the trustees to sell the property upon such contingency, and apply the proceeds, or so much thereof as might be necessary, to the liquidation of all the notes whether upon their face they had matured or not. It was to insure the prompt performance of the original contract, and not to change or alter it. It was to enable the trustees to apply the proceeds of the sale to the payment of the entire debt instead of a part. The notes could not, by the happening of such contingency, mature for general purposes, and hence the plaintiff could not have brought suit upon this note prior to its maturity, as expressed on its face. We

are therefore disposed to regard the deed as merely collateral and furnishing new and additional security for the performance of the contract; and the doctrine is well recognized, that the taking of such additional security without agreeing to give time to the debtor, will not discharge the surety."

In the case from which we make the above quotation the additional security was taken after the execution of the original contract of suretyship. The appellee's counsel admit that in the case at bar there was no such concealment as amounts to a fraud, but he bases his contention upon the ground of a change of contract after its execution. The argument used in the foregoing quotation, therefore, applies with peculiar force to the case in hand, and serves to refute the appellee's theory upon the line pursued by him. But, as we have seen, we regard the gist of this paragraph of the answer as an attempt to plead, not a change of contract after its execution, but a fraud by the suppression of a material fact. In neither case, however, do we consider the plea as sufficient.

It should be borne in mind that, before the omission to disclose a material fact by the creditor will operate as a fraud and discharge the surety, the fact must be such as in some way to affect the liability of the surety to his detriment. We can not conceive how the fact that the appellant had taken, or was about to take, additional security could in any manner injure the surety in the case before us. It is not even every false and fraudulent representation that will discharge a surety from liability. *Shropshire* v. *Kennedy,* 84 Ind. 111.

Nothing is shown in this paragraph by which it appears that the exercise of the appellant's option in any way tended to injure the rights of the appellee. It is not shown how, if in any way, the appellee was made to suffer by the foreclosure of the chattel mortgage and the sale of the property. The most that the appellee could have demanded was that the appellant should use reasonable care and diligence in the preservation of the collateral security given him by the prin-

cipal debtor. In regard to collaterals, the rule is well known that before the surety will be released it must appear that the creditor was guilty of some wrongful act by which such collaterals were either released, or fraudulently surrendered, or dissipated.    *Vance* v. *English*, 78 Ind. 80.

Here there is no pretence that anything of the kind occurred, and we do not understand, therefore, how the taking and subsequent foreclosure of the mortgage could have injured the surety, or operated to discharge her.

If the appellant had taken from the principal debtor a mortgage to secure every note but those upon which the appellee was surety, and had foreclosed that mortgage and sold the property, we ·presume no one would contend that this act in any manner affected the liability of the appellee as surety upon the notes she signed as such.    The fact that the mortgage security was made to cover also the notes which the appellee indorsed as surety could only operate as a benefit and not as an injury to the appellee, and it is hard to see upon what rule of law or equity a surety thus affected could claim a release.    That the property upon which the mortgage was given did not sell for an amount sufficient to pay the entire indebtedness, including the notes of the surety, was the only thing that prevented the mortgage from operating as an actual benefit to the surety herself, and this circumstance can hardly be interpreted to the detriment of the appellant in the absence of any showing that it was in any manner blameworthy.    While it is true that sureties are not bound beyond the terms in which they engage, the contract itself must be given a reasonable interpretation. The rule does not require nor authorize a forced or unreasonable construction of the contract with a view of relieving the sureties.    *Irwin* v. *Kilburn*, 104 Ind. 113.

Had there been an extension of the time of payment by the creditor to the principal, there might be some ground for the appellee's contention.    But where the collateral security

operates as accelerating rather than delaying the remedy the surety is not discharged.    Brandt Suretyship, etc., 321.

From what has been said it must be apparent that we do not regard this paragraph as sufficient to constitute any defence to the action against the surety, and that we are of the opinion that the demurrer to it should have been sustained.

It appears from the special finding that the conclusion which the trial court reached was based principally upon the paragraph of the answer of which we have just disposed. This necessitates a reversal of the case, without reference to any other questions that may be involved in this appeal. There is, as we have seen, another paragraph of answer to which a demurrer was addressed and overruled, and, as the questions presented by that ruling may arise again on another trial, it is thought best to dispose of these also.    We therefore proceed to consider the sufficiency of the first paragraph of the answer.

It is averred in this paragraph that the appellee signed the note as surety for Horace Park, and that she executed the same, together with another note of like date, for $575, due December 15, 1889, and that said notes were given as evidence of the last instalments of purchase money for a certain traction engine, which the appellant had sold to said Horace; that the other instalments were evidenced by the individual notes of said Horace, and secured by chattel mortgage on said engine, upon which judgment has been taken against him, and a decree of foreclosure, and order for the sale of the property entered, and that said Horace has become and is notoriously insolvent, and whatever judgment is rendered upon the note now in suit, and the last of said series of notes not yet matured, the appellee will be compelled to pay; that there has been a total failure of consideration of the note now in suit, as well as of the note yet to mature in this, that about one week before the purchase of said engine said Horace had purchased a threshing machine, or separator, from the appellant, and the engine he then had, not being suffi-

cient to propel said separator, he opened negotiations with the appellant's agent at Kokomo, Indiana, for the purchase of the engine now in controversy, explaining to him fully the use for which he intended it, viz.: to run the separator; that said agent had said engine in stock at said city of Kokomo, and the said Horace executed to said agent the following order therefor, being one of the printed forms used by the appellant in their business of manufacture and sale of engines, to wit:

"KOKOMO, IND., July 26, 1887.

"*The Springfield Engine and Thresher Co., Springfield, Ohio:*

"You will please ship for the undersigned, in care of J. B. Michner, agent at Kokomo, Indiana, by the route you think best and cheapest, if possible on or before the ————, one of your traction engines on wheels, ten-horse power, engine furnished with spark-catcher, governor and stop-valve, pump, heater, whistle, tallow and oil cups, water and steam cocks, safety-valve, blow-off and check-valve with stops, steam and water gauges, six feet of hose, all necessary wrenches, oil can, governor belt, poker and scraper. The above machinery to be warranted with proper usage and management to do as good work as any of its size made for the same purpose, and to be of good material and durable with proper care. If said machine shall fail to fill said warranty written notice shall be given to the Springfield Engine and Thresher Company, Springfield, Ohio, and also to the local agent of whom the machine was purchased, stating wherein it fails to fill the warranty, and a reasonable time allowed them to get to the machine and remedy the defect, if any there be, if it be of such a nature that a remedy can not be suggested by letter, the undersigned rendering necessary and friendly assistance. If the machine can not be made to fill the warranty, it shall be returned by the undersigned to the place where received, and another furnished, which shall perform the work, or the money and notes which shall have been given for the same shall be returned, and no

further claim made on the Springfield Engine and Thresher Company. If the above-ordered clover hulling and cleaning attachment shall fail to perform its work as above warranted, and the Springfield Engine and Thresher Company fails to make it work after notice has been given as above provided, it is to be returned to the place where received and the money or notes given for the same are to be returned to the undersigned; it being especially understood and agreed that the failure of said clover hulling and cleaning attachment to perform its work as warranted shall not condemn or be grounds for returning any part of the above machinery except the said clover hulling and cleaning attachment. In consideration whereof the undersigned agrees to receive the same on arrival and to pay to your order at the time of delivery the sum of twelve hundred and twenty-five dollars as follows, to wit: Cash, $———— ——, in hand on delivery, and notes with approved security,—securities if personal to be undersigned; said notes to draw interest from date at six per cent. per annum, payable at the Tipton County Bank : Note for $200, due December 25th, 1887 ; note for $500, due December 25th, 1888 ; note for $575, due December 25th, 1889, and further agreed to give in security on the foregoing notes a first mortgage on the above machinery, and on the following other property, viz.: Daniel Smith and Mary Park to sign last two notes, and mortgage on engine for first note. It is further mutually understood and agreed that continued use of said machinery shall be evidence of the fulfillment of the warranty and of full satisfaction to the undersigned, who agrees thereafter to make no other claim on the Springfield Engine and Thresher Company, and, further, that if the above machinery, or any part thereof, is delivered to the undersigned before settlement is made for same as herein agreed, or any alterations or erasures are made in the above warranty, or in this special undertaking and agreement, the undersigned waives all claims under the warranty.

(Signed)     "HORACE PARK."

That thereupon, after said contract was executed, said local agent, Michner, agreed to put a man in charge of said engine and run it down to his, said Park's, residence in Hamilton county, Indiana, and was to put it in good running order, and if it worked in accordance with the stipulations in the order said Horace was to complete the purchase by receiving the engine and furnishing the personal security on the deferred payments as specified in the contract; that upon trial said engine was found to be deficient and could not be made to work by the person put in charge thereof by said Michner, and after a trial of two days the party in charge failed to make the engine work properly and returned to Kokomo and Michner sent another machinist the next day, who likewise failed to make the said engine work after repeated trials; the last named person insisted upon said Horace's completing said purchase by accepting the engine and furnishing the specified personal security upon said deferred payments, which the latter at first refused to do, but after being importuned for some time said Horace finally agreed to receive said engine, and the appellee, being the Mary Park mentioned in said order, agreed to sign said notes, being the one now in suit and the other for $575 maturing December 25th, 1889, upon the following terms and conditions, and not otherwise: That the appellant should cause said engine to be thoroughly overhauled and made to work well in every particular, and should immediately send skilled men to the residence of said Horace Park for that purpose, and upon this agreement and not otherwise, made with Horace Park and herself, the appellee signed the two notes above mentioned, and said Horace accepted the engine, and the appellant waived its right to have the signature of Daniel Smith to the notes; that afterwards the appellant wholly failed to send any person to overhaul said engine or make it work properly, although said Horace has repeatedly appealed to appellant and its agent, Michner, by letter and in person, and made frequent requests of them to do so, to

which they paid no attention whatever, and have allowed said engine, an imperfect and worthless piece of machinery, to remain on his hands ever since; that the appellant has taken judgment against said Horace upon the first note and foreclosed said chattel mortgage upon the engine, and is about to sell the same to satisfy the judgment; that after repeated trials and with the use of the best skill said Horace has been unable to make said engine work or generate power sufficient to run said separator or do any other work, and the appellant has refused, though often notified, to render him any assistance therein ; that said Horace has been in the business of threshing wheat for several years by the application of steam power, which requires great promptness, expedition and speed to do proper work and retain custom, and in consequence of the inability of said engine to generate power sufficient, his said work was slow, wasteful, expensive and unprofitable to his customers and himself, so that he had to abandon his business and the use of said engine entirely; that appellee, not being a practical machinist, can not specify and enumerate with accuracy and minuteness all defects in said engine, but the following are some of the more prominent ones :

1. It was incapable of doing good work or doing half the work that a properly constructed engine of that pattern should do.

2. The material of its construction and its manner of construction were and are imperfect, in this, that its movement could not be controlled, and it could not be stopped at the will of the engineer, and a sufficient amount of power could not be generated and held so as to run the separator at a uniform speed and continuously for any length of time.

3. The injector and rest box, and other parts, were so defectively constructed that the parts would become heated and dangerous to operate ; that there were other organic defects which can not be specified,—all of which render the engine worthless, and in consequence of which said Horace lost his

custom, time and money, and became insolvent, and was damaged in a sum largely in excess of any value, use or benefit said engine has been to him. Wherefore she says the consideration for the note in suit, as well as the note not yet due, has wholly failed, and she asks that said notes each be surrendered to the files of the court for cancellation, etc.

We have thus set out, with but slight abridgment, the contents of the first paragraph of the answer, so that the application of the legal principles involved may the more readily appear.

It must be obvious from these averments that the appellee's contract of suretyship was entered into, not subsequently to the purchase of the machine by Horace, but contemporaneously therewith. Horace, it is true, had stipulated for the purchase of the engine, but he had agreed to give certain securities for the payment thereof, and, until that was done, the contract was not complete. This is manifest, also, from the fact that the engine had not been previously delivered, except conditionally, and the purchaser had not yet accepted the same. The attempt to show that the promise to place the engine in good condition was made after the sale, and specially to the appellee, is for the evident purpose of making it appear that the surety here signed the note upon a special consideration moving to her.

It may be admitted that every contract of suretyship or guaranty must rest upon some valuable consideration, however slight that may be. Where the original undertaking is founded upon a good consideration, and the contract of suretyship is entered into contemporaneously therewith, or where the original obligation is the inducement for giving credit, it may also be the consideration for the suretyship or guaranty. But an executed consideration to the principal is not sufficient alone to hold the surety liable. There must be some additional consideration. Brandt Suretyship, etc. (2d ed.), section 17; De Colyar Guarantees, etc., 22 *et seq.;* 9

Am. & Eng. Encyc. of Law, 68 ; *Singer Mfg. Co.* v. *Forsyth*, 108 Ind. 334.

And the surety may doubtless set up, in defence to the action, a failure of consideration as between the payee and the surety, if such special consideration exists. *Jeffries* v. *Lamb*, 73 Ind. 202 ; *Meeker* v. *Shanks*, 112 Ind. 207 ; *Campbell* v. *Gates*, 17 Ind. 126.

The claim that as a special inducement to the appellee for signing the note as surety the appellant agreed to place the engine in good working order is based upon the assumption that the debt for which the notes were given had already been incurred, and that the contract of suretyship was, therefore, a new and independent undertaking, an assumption, as we have seen, which is not borne out by the facts alleged. We think the answer plainly shows that the contract of suretyship was entered into contemporaneously with the sale of the property, was made with both the principal and surety, and was part and parcel of the same transaction, and, in some sense, of the same contract. The contract of sale and suretyship must therefore be construed together. *Singer Mfg. Co.* v. *Forsyth, supra; Irwin* v. *Kilburn, supra*; *Weed Sewing Machine Co.* v. *Winchel*, 107 Ind. 260 ; *McDonald* v. *Huestis*, 1 Ind. App. 275.

There is no averment in this paragraph that the appellee did not know upon what terms the engine was purchased ; indeed, the appellee fully sets forth the terms of such purchase in the answer we are considering, and is therefore presumed to have known them. The written application of Horace Park is the foundation of such purchase. It was made contemporaneously with the contract of suretyship. In it are contained the stipulations of warranty, and they can not be varied by any contemporaneous verbal agreements. That being the case, the appellee must be held to the terms of the warranty expressed in the written application.

It must be plain, therefore, that what the appellee in this

paragraph designates as a failure of consideration is really a breach of a warranty. Is this a defence of which the surety can avail herself, or is it personal to the principal?

That a breach of warranty may be pleaded by the principal as a cross-action and whatever may be due on the face of the contract recouped *pro tanto,* we think is abundantly settled by the authorities. *Bushman* v. *Taylor,* 2 Ind App. 12; *Hillenbrand* v. *Stockman,* 123 Ind. 598. The appellant insists, however, that this may not be done by the surety, and especially where the principal has had his day in court and has failed to avail himself of the remedy.

Section 349, of the statute, provides that, " In all actions upon a note or other contract against several defendants, any one of whom is principal and the others sureties therein, any claim upon contract in favor of the principal defendant, and against the plaintiff or any former holder of the note or other contract, may be pleaded as a set-off by the principal or any other defendant."

We are aware that the defences here spoken of are generally resorted to in the practice only in cases of set-off, but we do not think it was the intention of the law-makers to limit it to such technical defences. We think the expression " set-off" here may be used as synonymous with " defence," and that it was contemplated that any claim which the principal defendant might have against the creditor, whether it be in the nature of payment, set-off or counterclaim, should be available, not only to the principal debtor, but to any of the sureties. That such rights exist in equity, and independent of statutes, there can be no doubt, and as our code has blended all equitable and legal defences and remedies it is certain that even if the defence does not exist as a naked legal right, but is available in equity, it may be taken advantage of under our code system.

In the case of *Gillespie* v. *Torrance,* 25 N. Y. 306, it was held that an accommodation endorser of a note given for a chattel could not, *at law,* avail himself of a breach of war-

The Springfield Engine and Thresher Company v. Park.

ranty of a chattel by way of defence, and that such a defence does not rest upon a failure of consideration of the contract upon which the action is based, but is the setting off of one claim against another. But the court in that case place the ruling upon the express ground that such relief exists only in equity, and intimate in strong terms that the remedy would still be open to the surety, " especially if the insolvency of the parties renders that course necessary for his protection." To the same effect are *Lasher* v. *Williamson*, 55 N. Y. 619, and *Davis* v. *Toulmin*, 77 N. Y. 280.

In the case at bar the answer avers specifically that the principal is hopelessly insolvent.

In *Scroggin* v. *Holland*, 16 Mo. 419, it was decided that the sureties on a note given for the price of a slave, in a suit against them in which the principal was not joined, may set up, as a defence to the action, a breach of warranty of the soundness of the slave. The same was held in the case of a breach of warranty of a horse. *Mitchum* v. *Richardson*, 3 Strob. L. (S. C.) 254.

It may be stated, we think, as a general rule, that no one, except a privy, can be barred by a judgment or proceeding to which he was not a party, and this rule applies as well to a surety where a judgment has been rendered against his principal to which such surety was not a party. See *Ohning* v. *City of Evansville*, 66 Ind. 59.

The mere fact, then, that the principal debtor in this case had been sued upon this same note, and had not set up the counter-claim growing out of the breach of warranty of the engine, which, according to the averments of this paragraph, was due him, can not prevent the surety from availing herself thereof if it exists ; and this must be especially true, inasmuch as it is averred that the principal is insolvent.

Our conclusion is that the first paragraph of the answer is sufficient, and that the court did not err in overruling the demurrer to it.

For the error in overruling the demurrer to the second

paragraph of the answer the judgment is reversed, with instructions to the court below to sustain the demurrer to said paragraph, and to proceed further in accordance with this opinion.

Filed Dec. 10, 1891.