KIMMEL ET AL. v. STATE OF INDIANA, EX REL. ANDERSON BANKING COMPANY.

[No. 10,535.   Filed November 18, 1920.   Rehearing denied March 16, 1921.]

1. PRINCIPAL AND SURETY.—Contractor's Bond.—Liability of Surety.—Money Borrowed by Contractor to Pay for Construction Work.—When money is loaned to a contractor upon the credit of the contractor's bond, and is expended by the contractor in paying for labor and materials used in the work of construction, the claim is covered by the bond unless the surety is relieved by some act of the party seeking to enforce the liability.   p. 174.

2. PRINCIPAL AND SURETY.—Contractor's Bond.—Release of Surety.—Acceptance by Contractor's Creditor of Other Security.—Where a banking company advancing money to a road contractor to pay for labor and materials and taking an assignment of the contract and estimates as security also took notes signed by the contractor and another as surety as additional security for the amounts so advanced, but did not surrender the assignment of the contract and estimates, the notes, though they were negotiable, did not constitute payment, or release the surety on the contractor's bond given to secure payment

of claims for labor or materials, especially as it was not possible to complete the work under the contract and have the estimates made until after the maturity of the notes, so that there was no extension of time which was harmful to the surety. p. 174.

3. PRINCIPAL AND SURETY.—*Contractor's Bond.—Release of Surety.—Creditor's Recovery on Collateral Note.—Failure to Enforce Judgment.—Release of Judgment Debtor's Real Estate.* —Where a banking company advancing money to a road contractor to pay for labor and materials and taking an assignment of the contract and estimates as security also took notes executed by the contractor and a third person as surety as additional security, the fact that it recovered a judgment on the notes, which though collectible was not enforced, and that it released real estate owned by the surety on the notes from the lien of the judgment, did not release the surety on the contractor's bond from his liability thereunder. p. 176.

4. BANKRUPTCY. — *Contractor's Bond. — Release of Surety. — Bankruptcy of Part of Principals.*—Where two members of a firm of partners under contract to construct a road became bankrupt and were discharged, such fact did not operate to release the surety on the contractor's bond given by the firm from liability thereunder for money borrowed by the remaining partner for use in completing the contract. p. 178.

5. PRINCIPAL AND SURETY.—*Sureties.—Rights and Liabilities.*— While a surety may stand on the exact terms of his contract, he is as much bound by the intent and meaning of the contract which he voluntarily subscribes as is the principal. p. 178.

6. PRINCIPAL AND SURETY.—*Sureties.—Liability.*—Sureties are bound in the manner, to the extent and under the circumstances as they existed when the contract was executed. p. 178.

7. PRINCIPAL AND SURETY.—*Sureties.—Liability.—Contracts.— Construction.*—When a surety has made a lawful contract, his obligations are to be determined by the same rules of construction as that of any other legal contract, and regard must be given to the object of the contract, to its occasion, and to the obvious designs of the parties. p. 179.

8. PRINCIPAL AND SURETY.—*Sureties.—Contracts.—Construction. Reference to Other Instruments.*—Where a contract of suretyship refers to another instrument, and it is clear that that instrument was considered by the parties at the time of contracting and was the inducement for the act, such instrument becomes a part of the contract. p. 179.

9. BANKRUPTCY.—*Bankruptcy of Partners.—Obligation of Surviving Partner to Complete Firm Contract.*—Where the liability of the members of a partnership firm under contract to con-

struct a road was joint and several, the bankruptcy of two of the partners, though dissolving the partnership theretofore existing, did not release the surviving partner from his obligation to complete the contract in view of Bankruptcy Law 1898, §5, 30 Stat. at L. 547, 548.   p. 179.

10.   PARTNERSHIP.—*Dissolution.*—*Powers and Duties of Partners.*—After the dissolution of a partnership, partners have the power and are under the duty to perform existing firm contracts.   p. 180.

11.   BANKRUPTCY.—*Bankruptcy of Partnership.*—*Partnership Obligation.*—*Release of Surety.*—A surety on a bond given by a partnership under contract to construct a road is not released from liability by the dissolution of the contracting firm through the bankruptcy of two of the partners, so that, where the surviving partner completed the contract, the surety could not escape liability within the terms of the bond for money borrowed by such partner and expended by him for materials and labor used in the construction of the road.   p. 181.

From Madison Circuit Court; *H. J. Paulus,* Special Judge.

Action by the State of Indiana, on the relation of the Anderson Banking Company, against David J. Kimmel. and another.   From a judgment for relator, the defendants appeal.   *Affirmed.*

*Ira M. Sharp* and *Bagot, Free & Pence,* for appellants.

*Walter Vermillion* and *Kittinger & Diven,* for appellee.

MCMAHAN, C. J.—Action by the State of Indiana, on relation of the Anderson Banking Company, hereinafter designated as appellee, to recover on a contractor's bond signed by appellant Kimmel as surety.   The facts were found specially and are in substance as follows:

Jacob A. Jenkins, Frank H. Hines and Daniel J. Dalton, as partners, in 1909 entered into contracts with the board of commissioners of Madison county for the construction of two gravel roads under what is known as the "Three-Mile Road law."   They filed a bond with

David J. Kimmel hereafter designated as appellant, as surety, conditioned among other things, that if the contract was awarded them they would "pay all debts incurred by them in the prosecution of said work, including labor, materials furnished, and for boarding the laborers thereon." In December, 1910, said firm borrowed $3,000 of the appellee and, as security therefor, assigned the contracts and the estimates and allowances as made by the proper official on work to said bank. This loan was repaid. In March, 1910, Jacob A. Jenkins and Frank J. Hines were adjudged bankrupts and discharged as such. The parties interested in the contract thereafter upon consultation agreed that Daniel J. Dalton should complete the work under the contract and borrow whatever money was necessary for that purpose. Dalton thereupon completed the work under the contract and said roads were accepted by the board of commissioners. In order to buy material and pay the labor necessary to complete said roads, it was necessary for Dalton to negotiate certain loans of money and he entered into an agreement with appellee whereby it was agreed that appellee would advance or loan the money necessary to buy materials and pay the necessary labor, the appellant, Dalton, to draw his checks upon relator for that purpose, and that Dalton would execute his notes with Alex Jones as surety in addition to the security of the bond which appellant had signed. Appellee placed to the credit of Dalton $300, July 14, 1911; $800, August 4, 1911; and $1,000, August 11, 1911; all of which was checked out for necessary materials and labor. At the time when said several sums were placed to the credit of Dalton, he and Jones executed their notes to appellee; the first two being payable sixty days and the last thirty days from date. Said notes were given as additional security for said money so loaned. And at the time when they were given it was not pos-

sible to complete said contracts and have estimates made and payments made thereon until long after the maturity of the notes, which facts were well known to all the parties. When the contracts were completed and the roads accepted, materialmen had filed claims for materials, which claims were ordered paid out of the final estimate due the contractors. When these claims were so paid there was a balance of $324.25 due the contractors on the final estimate which was then paid to appellee on the sums so advanced by it. Appellee later commenced suit against Dalton and Jones on said notes and recovered a judgment thereon which is unpaid, although Jones is solvent and has property out of which the same may be satisfied. Dalton is insolvent and has no property subject to execution. Appellant knew of the condition of the work when Jenkins and Hines were discharged as bankrupts and knew that Dalton was alone undertaking to complete the work and that it would require money to buy material and pay the labor and left it to him to complete the work and to devise ways and means therefor. Appellant was an accommodation surety on said bond, without hire and without being indemnified, which facts appellee knew. Appellee continued to hold said contracts and assignment of estimates as security for said money so advanced and relied upon them as security therefor, and took said notes merely as evidence of the money so advanced and as additional security. Each of the notes was payable in a bank in this state and was governed by the law merchant. Appellee, at the time it advanced the money to Dalton, and when the notes were executed, refused to advance such money upon the sole security of the assignment of the contracts and, as a part of the transaction of executing said notes, it was agreed that appellee should continue to hold said assignments as collateral security therefor. Appellee at all times held

the assignments and it was agreed between appellee
and Dalton that appellee should hold and rely upon the
assignments as security for all money it might advance
for the completion of the contracts, and that the notes
were to be taken by the relator merely as evidence of
the money advanced and as security in addition to that
afforded by the assignments of said contracts.   Before
the commencement of this action appellee released dif-
ferent tracts of land owned by Jones from the lien of
said judgment, without appellant's knowledge or con-
sent.   None of the materialmen or laborers so paid out
of the moneys loaned and advanced by relator made any
assignment of their claims to relator.

Upon these facts the court concluded as a matter of
law that there was due appellee $2,306.57, and that it
was entitled to a judgment against the principals and
surety on said bond for that sum.

Appellant insists that the court erred in its conclu-
sions for the following reasons:   (1) That appellee
elected to accept the notes of Dalton and Jones in dis-
charge of the indebtedness for which this action is
prosecuted and therefore waived any claim against ap-
pellant.   (2) That the taking judgment on the notes
against a solvent surety is an election on the part of
appellee to accept such judgment as a settlement of,
instead of security for, the liability for which the notes
were given.   (3) The notes being payable in bank, the
right of appellee to recover from Dalton was merged in
the notes and judgment and could only be enforced by
proceeding on the judgment.   That is, appellee by tak-
ing judgment on the notes released Dalton from liabil-
ity on the bond and the release of the principal Dalton,
released appellant.   (4) The discharge of Jenkins and
Hines as bankrupts dissolved the partnership, and that
appellant was not liable thereafter for money borrowed
by any of the partners.   (5) That appellee, having

without the knowledge or consent of appellant accepted and held the assignments of the contracts throughout and after the discharge in bankruptcy and thereafter accepting a note with a solvent surety from one member of the firm who had not been declared a bankrupt and taking a judgment against such surety, released appellant from liability on the bond.

Appellant concedes that, when money is loaned to a contractor upon the credit of the contractor's bond and is used by the contractor in paying for labor and

1.    materials used in the construction of a road, the claim is covered by the bond unless the surety is relieved by some act of the party seeking to enforce the liability.

The facts under consideration show that two of the members of the contracting partnership had been discharged as bankrupts and that the remaining

2.    member of the firm was insolvent, though not a bankrupt. In order to carry out the contract and complete the work, it was agreed that the insolvent partner, who was without funds or credit, should proceed under the contract and complete the work. He applied to appellee for funds with which to pay for material and labor. Appellee refused to advance the necessary money on the assignments of the contracts and estimates, the fulfillment of which contracts was secured by the bond signed by appellant, unless security was furnished in addition to said assignments and bond. Thereupon the insolvent partner agreed to give appellee notes signed by Jones as such additional surety, the notes to be given as evidence of indebtedness only. Thereafter, as necessity required, appellee placed to the credit of the insolvent partner money to take up checks given to pay for necessary material and labor to complete said contracts, and the three notes hereinbefore mentioned were executed. When the work was finally

completed and final estimates made, certain material-men and laborers filed their claims as provided by stat-ute and after they were paid there was a balance of $324.25 due the contractors on the final estimates, which was applied on the amount due appellee.

Appellee refused to advance the money on the strength of the bond and assignments of the contracts and estimates. Neither did it rely upon the respon-sibility and financial standing of the insolvent partner, Dalton, and Jones. It relied upon all these things in advancing the money. It never surrendered the con-tracts and assignments and at the time of the trial of this case still held them as security for the money so advanced to Dalton, and by an agreement with the con-tractors it relied upon the contracts and assignments as security for the money, for which the notes were given as evidence, and which were signed by Jones as additional security.

Under these facts it is clear to us that it was not the intention of the parties that the notes signed by Dalton and Jones, were taken, nor can they be consid-ered, as a payment of the debts created when the money was loaned or advanced to Dalton. The notes, though negotiable under the statute, cannot under the facts be held to have been taken as payment of the loans for which they were given, nor to prevent appellee from maintaining an action against Dalton and appellant on the bond.

Appellant admits that under the authorities any in-debtedness incurred in the construction of this work was covered by appellant's bond, and that, where a ma-terialman who has furnished materials for the work and the contractor give a note with the materialman as surety, in order to borrow money with which to pay the materialman, the surety on the bond is liable. See *Title Guaranty, etc., Co.* v. *State* (1915), 61 Ind. App.

268, 109 N. E. 237, 111 N. E. 19; *State, ex rel.* v. *Adams* (1918), 187 Ind. 165, 118 N. E. 680. In considering the questions involved in this appeal, we must keep in mind that the notes signed by Dalton and Jones were not given for the protection of appellant, but for the further protection of appellee.

The taking of the notes by the bank and the requiring of the additional security did not make the facts as found operate as a payment of the debt, nor change the liability of appellant as surety. The time when the work on the roads could or would be completed was uncertain. Appellant's contract of suretyship was indefinite and uncertain as to what the liability would amount to, or when, if at all, he might be called upon to pay. The amount, if any, that appellant would be called upon to pay could not be ascertained until the work was completed, the final estimates made, the roads accepted and the amount of the unpaid claims for material, labor, etc., ascertained. The court found that it was not possible to complete the work under the contract and have the estimates made until long after the three notes matured. There was, therefore, no extension of time that could possibly injure appellant in any way. Indeed it would not have had the effect of releasing appellant, if the time for paying the notes had been extended beyond the time when appellant's liability could have been ascertained, as under the contract and bond the contractor had authority to contract for labor and materials and to enter into an agreement with the parties for the payment therefor at a fixed future date, without releasing appellant from his liability as surety. *State, ex rel.* v. *Adams, supra.*

3. The fact that the appellee took a judgment against Dalton and Jones on the notes did not operate as a payment of the debt. The appellee was under no obligation to appellant to collect the amount

advanced to Dalton from Jones, or to make any attempt to do so. Neither was it under any obligation to issue an execution on the judgment. If there had been an execution issued and a levy made on property of Dalton and the relator had released such property from the levy to the injury of appellant, a very different question would be presented. The collateral or additional security given to the relator by reason of Jones having signed the notes was not given to protect the appellant and did not in any way change or affect his liability. In so far as he is concerned the appellee might, if it saw fit, release Jones from all liability, and not in the least increase the liability of appellant as fixed by his contract of suretyship. If appellee had recovered a judgment against the principal debtor and appellant, or against the principal alone, and an execution had been issued thereon and levied upon property of the principal subject thereto and such property by the act of the appellee had been released from the levy and lost as a security, appellant would have been discharged to the extent that he was injured thereby. 1 Brandt, Suretyship (3d ed.) §489. This is on the theory that after a levy the creditor is regarded as a trustee of the execution for the benefit of all persons interested and he will not be permitted to release the levy to their injury. The appellee here has released nothing to the injury of appellant. See *Springfield, etc., Co.* v. *Park* (1891), 3 Ind. App. 173, 29 N. E. 444.

The appellant was liable on his bond to the appellee for the money advanced and loaned to Dalton, and we hold that the fact that appellee has taken a judgment against Dalton and Jones and has released some of the real estate of Jones from the lien of that judgment does not have the effect of releasing appellant from the obligation of his contract. In fact, if Jones had been

compelled to pay appellee, he would have been subrogated to the rights of appellee, and could have maintained an action against appellant on his bond.

4. The discharge of two of the principals as bankrupts did not release appellant from liability on his bond. *Michener* v. *Springfield, etc., Co.* (1895), 142 Ind. 130, 40 N. E. 679, 31 L. R. A. 59.

We have given careful consideration to the authorities cited by appellant. They are not of controlling influence and are not inconsistent with anything in this opinion. Judgment affirmed.

## ON PETITION FOR REHEARING.

McMAHAN, J.—Appellants on petition for rehearing insist that the bankruptcy of Jenkins and Hines dissolved the partnership existing between Jenkins, Hines and Dalton and that he cannot be held liable for the payment of money which Dalton borrowed from appellee banking company.

He contends and cites numerous authorities in support of the contention that, being an accommodation surety, he has a right to stand on the strict letter

5. of his contract; and that it is no concern of his what the result of such construction may be. The fault with this contention is the common one of misapplication. Appellant seemingly overlooks the fact that there are well settled rules of construction of contracts, and that these when found are the true rules for the guidance of the court. While the surety may stand on the very terms of his contract, he is as much bound by the intent and meaning of his contract which he voluntarily subscribes as is the principal. Sureties are bound in the manner, to the extent and under the

6. circumstances as they existed when the contract was executed. *Read* v. *Bowman* (1864), 2 Wall.

591, 17 L. Ed. 812. The law throws no particular wall of defense around a surety. When he has made a lawful contract, his obligations are to be determined by the same rules of construction as that of any other lawful contract. Regard must be given to the object which the writing was to accomplish, to the occasion which gave rise to the relative positions of the parties and their obvious designs as to the object to be accomplished. The whole writing should be considered in determining the meaning and intent of the contract. Where reference is made to another instrument and it is clear that that instrument was considered by them at the time of contracting and was the inducement for the act, that instrument becomes a part of the contract. The contract for the construction of the roads was mentioned in the bond now under consideration. We must, therefore, consider that appellant when he signed the bond did so with reference to the contract and with knowledge of the law requiring the contractor to give such bond.

The liability of the contractors Jenkins, Hines and Dalton was joint and several. The bankruptcy of Jenkins and Hines dissolved the partnership theretofore existing, but it did not release the other partner, Dalton, from his obligation to complete and carry out the contract for the construction of the roads. Under the law it was his duty, as surviving partner, to finish the work already contracted. When appellant signed the bond in controversy, he did so well knowing that death or bankruptcy might dissolve the partnership and prevent the three partners from participating in the actual carrying out the contract, and he is presumed to have known that in such an event the contract would not be abrogated, but that it would be the duty of the remaining partner to complete the

roads in accordance with the contract. §5 U. S. Bankrupt Law 1898, 30 Stat. at L. 547, 548. The position of appellant is similar to that of a surety on the bond of joint administrators or executors, where, under the terms of the will or under the law, the other, in case of death or disability, may act. In such cases where the sole administration devolves upon one administrator or executor in consequence of death or other disability, it has been held that "the law contemplated that state of things, and the obligation of the bond will not be impaired, but the securities will be held liable." *State* v. *Boon* (1869), 44 Mo. 254; *Dobyns* v. *McGovern* (1852), 15 Mo. 662.

As said in *Dickson* v. *Indianapolis, etc., Co.* (1878), 63 Ind. 9: "The cessation of the partnership, therefore, was not an abandonment of the contract on the part of the defendants, nor did it authorize the plaintiff to treat the contract as · rescinded." Chancellor Kent in the leading case of *Griswold* v. *Waddington* (1819), 16 Johns (N. Y.) 438-493, says: "A dissolution of a partnership only has respect to the future. The parties remain bound for all antecedent engagements. The partnership may be said to continue as to everything that has past, and until all pre-existing matters are wound up and settled."

This is not a case where death or bankruptcy put an end to the business. The business of this partnership was to construct the roads in accordance with the contract, and upon the bankruptcy of the two partners, the duty devolved upon the other partner to finish the work. After dissolution, partners have the power, and are under the duty to perform existing firm contracts. 1 Rowley, Mod. Law of Partnership §599; *Fail & Mills* v. *McRee* (1860), 36 Ala. 61; *Whiting* v. *Farrand* (1814), 1 Conn. 60.

The rule is stated in *Jacksonville, etc., R. & N. Co.* v.

*Warriner* (1895), 35 Fla. 197, 16 South. 898, as follows: "Where a partnership had entered into an executory contract, which was only partially performed at the death of the deceased, his death does not absolve either party from performance, in the absence of an express stipulation to that effect; and the existence of the partnership with its active functions to be exercised by the survivor is continued until the contract has been fully performed." To the same effect see *Davis* v. *Sowell & Co.* (1884), 77 Ala. 262.

A recent author states the rule as follows: "A surety upon a partnership bond is liable only for a breach of the obligation occurring before the dissolution of the firm, but if the surety has become liable for the performance of a particular contract by a partnership, its subsequent dissolution before the completion of the contract will not release him from the liability for each of the former partners so far as that particular contract is concerned." 2 Rowley, Mod. Law of Partnership §837. Citing *Kaufmann* v. *Cooper* (1896), 46 Neb. 644, 65 N. W. 796; *Freeman* v. *Berkey* (1891), 45 Minn. 438, 48 N. W. 194.

In *Holmes* v. *Shands & Johnson* (1854), 27 Miss. 40, it was held that where a contract was made with a firm during the existence of the partnership, it was competent for the parties, after dissolution to carry out a contract previously made, and in part performed. To that extent the partnership would be considered in law as still existing.

The argument of appellant is that he did not, by the bond, agree to pay the liabilities of Dalton, but that his agreement was to stand responsible for the acts and omissions of the partnership made up of Jenkins, Hines and Dalton; that he has a right to insist that he is not liable for the debts created by Dalton after the discharge in bankruptcy of Jenkins and

Hines, because the uprightness, integrity and honor of Jenkins and Hines may have been the inducing cause which lead to the execution of the bond; that he as surety might have been willing to stand responsible for the acts of the partnership so long as Jenkins and Hines were there to watch Dalton, but would not be willing to trust Dalton alone.

This argument can avail nothing. So far as we are advised there was nothing to prevent Jenkins and Hines being present during the completion of the contract. The court, without naming the parties interested, found that "after adjudication in bankruptcy consultations were had between the parties interested, said David J. Dalton, Frank J. Hines and others, about the completion of said contract and that it was understood and agreed that said Dalton was to go ahead and complete said contract and to borrow whatever sums of money needed therefor." While the court did not specifically state that appellant was one of the parties to these consultations, he was certainly an interested party and being such we have a right to infer that he was present at such consultations and agreed that Dalton should finish the work as required by the contract and if necessary borrow money for that purpose.

The fact that appellant was an accommodation surety does not relieve him from liability.

Petition for rehearing denied.