## NATIONAL SURETY CO. v. GEORGE E. BREECE LUMBER CO.

### No. 583.

Circuit Court of Appeals, Tenth Circuit.

Aug. 5, 1932.

E. R. Wright, of Santa Fé, N. M. (Jones, Goldstein, Hardie & Grambling, of El Paso, Tex., and Donovan N. Hoover, of Santa Fé, N. M., on the brief), for appellant.

J. Benson Newell, of Las Cruces, N. M. (W. C. Whatley, of Las Cruces, N. M., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

PHILLIPS, Circuit Judge.

On September 7, 1926, the lumber company entered into a contract with Cooper and Otey, a partnership composed of C. H. Cooper and Charles B. Otey, by which the partnership agreed to cut, skid, and deliver to the lumber company fifty million feet of logs on the Mescalero Indian Reservation in Otero County, New Mexico.

Thereafter Cooper and Otey as principal and the National Surety Company as surety entered into a bond, the material portions of which follow:

"Know All Men by These Presents, That We, C. H. Cooper and Charles B. Otey, doing business as Cooper and Otey, a partnership, of Flagstaff, Arizona, hereinafter called the Principal, as Principal, and the National Surety Company, a corporation under the laws of the State of New York, hereinafter called the Company, as surety, are held and firmly bound unto The George E. Breece

848

Lumber Company, a corporation, hereinafter called the obligee, in the penal sum of Twenty Thousand Dollars ($20,000.00), which sum is hereby agreed to be the maximum liability hereunder, lawful money of the United States of America, well and truly to be paid, and for the payment of which we and each of us hereby bind ourselves, our heirs, executors, administrators and successors, jointly and severally, firmly by these presents.

"Dated this 25th day of October, 1927. * * *

"Whereas, said Principal has entered into a certain contract * * * bearing date September 7th, 1926, with said Obligee, providing for the cutting of timber on the Mescalero Indian Reservation * * * which contract contains a clause, No. 15, reading as follows:

" '15. It is further agreed that the party of the Second Part (Cooper and Otey) is to assume all obligations and fully comply with the requirements of the Indian Department, not only in cutting and delivering said logs, but also the brush and disposal of the refuse and in every manner meet the requirements of said Indian Department; and will also clean up each area as it is reached after logging operations have been begun and particularly that no back areas shall be left as the said work progresses.' * * *

"Now, Therefore, the condition of this instrument is such that if the Principal indemnifies the obligee against all loss or damage directly arising by reason of the failure of the Principal to faithfully comply with the conditions imposed by said paragraph 15 of the contract above referred to, as herein quoted, then this instrument shall be null and void, otherwise to remain in full force and effect."

The lumber company brought this action on the bond and in its complaint alleged that Cooper and Otey had breached such paragraph 15; that the Bureau of Indian Affairs had demanded that the lumber company clean up the cut over areas as required by such paragraph 15; that the lumber company had notified the surety company of such breaches and demand; that the lumber company cleaned up such areas and that the cost thereof, after applying thereto certain credits due to Cooper and Otey, was $7,774.50; and that Cooper and Otey had not indemnified the lumber company therefor.

In its amended answer the surety company alleged, as its first affirmative defense, that Cooper and Otey fully performed the provisions of paragraph 15 of the logging contract from the date of its execution to April 1, 1928; that on such date the partnership was dissolved by mutual consent and Otey had retired therefrom; that thereupon the lumber company and Cooper agreed that Otey should be released from the logging contract, and that it should thereafter be carried out by Cooper individually; that Cooper individually continued to perform such contract; and that the release of Otey was without the knowledge and consent of the surety company. As its second affirmative defense, it alleged that Otey died about July 1, 1928; that up to that date Cooper and Otey and Cooper individually fully complied with the provisions of paragraph 15 of the logging contract; that the death of Otey dissolved such partnership and terminated the logging contract, and that the surety company was not liable under such bond for any acts or defaults occurring subsequently thereto. It further alleged, as an offset, that Cooper discontinued work under such contract on March 2, 1929; that the lumber company and Cooper agreed that the latter should be released from the contract, and that he should be credited with the reasonable value of all cut logs remaining in the logged areas and the credit applied against the cost of cleaning up the cut over areas; that such credit amounted to $2,817.25, and that the surety company was entitled to offset that amount against any liability under the bond.

The trial court sustained the lumber company's demurrer to the second affirmative defense.

The evidence established that all of the breaches of the provisions of paragraph 15 of the logging contract occurred after the death of Otey. The surety company introduced evidence which fully supported the allegations of its first affirmative defense, and tendered an instruction which properly submitted such defense to the jury. The court refused to give such instruction. The surety company tendered evidence in support of the allegations upon which its claim of set-off was based. Such evidence was rejected.

From a verdict and judgment in favor of the lumber company for $8,561.01, the surety company has appealed.

Counsel for the lumber company contend that the bond is a contract of guaranty insurance rather than one of suretyship, and that the rights and the liabilities of the parties must be determined from the principles applicable to insurance contracts.

■■ While the distinctions between ordinary contracts of suretyship and those of guar-

anty insurance have not been clearly drawn, one usually recognized is that in contracts of suretyship the surety obligates himself to do the act if the principal fails, while in contracts of guaranty insurance the insurer agrees to indemnify the insured for any loss he may sustain on account of the acts or defaults of the principal. Cooley's Briefs on Insurance (2d Ed.) vol. 1, p. 16.

Mr. Joyce in his work on insurance (2d Ed.) vol. 1, § 12, says:

"Guaranty insurance is a contract whereby one, for a consideration, agrees to indemnify another against loss arising from the want of integrity, fidelity, or insolvency of employees and persons holding positions of trust, against insolvency of debtors, losses in trade, losses from non-payment of notes and other evidences of indebtedness, or against other breaches of contract."

This definition has been judicially approved in the following cases: People v. Rose, 174 Ill. 310, 51 N. E. 246, 44 L. R. A. 124; People ex rel. Gosling v. Potts, 264 Ill. 522, 106 N. E. 524; American Surety Co. v. Folk, 124 Tenn. 139, 135 S. W. 778, Ann. Cas. 1912D, 1024. See, also, Craft v. Standard Accident Ins. Co., 220 Ala. 6, 123 So. 271; Hare & Chase v. National Surety Co. (D. C. N. Y.) 49 F.(2d) 447, 453.

█ Under the terms of the bond in the instant case, Cooper and Otey agreed to indemnify the lumber company against loss resulting from their failure to carry out the terms of such paragraph 15, and the surety company agreed to pay such indemnity in the event of default therein by Cooper and Otey. As between the lumber company and Cooper and Otey, the bond may be a contract of indemnity insurance. As between the lumber company and the surety company, the latter was surety for Cooper and Otey.

It is a general rule that, where a partnership has entered into an executory contract which remains unperformed in whole or in part at the date of the death of one of the partners, his death does not release the partnership from performance of such contract, in the absence of provision in the contract to that effect; and the existence of the partnership, with its active functions to be performed by the survivor, is continued until such contract has been fully executed. Whitesell v. Pioneer Const. Co. (Mo. App.) 2 S.W.(2d) 147; Ayres v. Chicago, R. I. & P. R. Co., 52 Iowa, 478, 3 N. W. 522; Davis v. Sowell & Co., 77 Ala. 262; Jacksonville, M. P. Ry. & Nav. Co. v. Warriner, 35 Fla. 197, 16 So.

898; Asbestos Mfg. & S. Co. v. Lennig-Rapple Eng. Co., 26 Cal. App. 177, 146 P. 188; Griswold v. Waddington, 16 Johns. (N. Y.) 438; Lackner v. McKechney (C. C. A. 7) 252 F. 403; Rowley's Modern Law of Partnership, Vol. 1, § 599.

In Griswold v. Waddington, supra, the court said:

"A dissolution of a partnership only has respect to the future. The parties remain bound for all antecedent engagements. The partnership may be said to continue as to every thing that is past, and until all pre-existing matters are wound up and settled."

██ It is true that the survivor cannot make new contracts and bind the personal representative of the deceased partner thereby, but he may and it is his duty to perform contracts entered into before the death of his copartner. Ayres v. Chicago, R. I. & P. R. Co., supra; Andrews v. Stinson, 254 Ill. 111, 98 N. E. 222, Ann. Cas. 1913B, 927.

Contracts which provide for the performance of personal services or require the exercise of peculiar skill, and therefore can only be performed by a particular person, terminate with the death of the one bound to perform such services or to exercise such skill, and are excepted from the general rule. Ayres v. Chicago, R. I. & P. R. Co., supra; Wolfe v. Howes, 20 N. Y. 199, 75 Am. Dec. 388; Story on Bailments, § 36; Williston on Contracts, vol. 3, § 1940.

In the instant case neither the logging contract nor the bond involved the rendering of personal services or the exercise of peculiar skill.

Counsel for the surety company urge that the principles above adverted to are inapplicable because of the provisions of sections 105-111 and 100-105, N. M. S. A. 1929, which are set out in note 1, below.

NOTE 1.
"Suits may be brought by or against a partnership as such, or against all or either of the individual members thereof; and a judgment against the firm as such may be enforced against the partnership's property, or that of such members as have appeared or been served with summons; but a new action may be brought against the other members in the original cause of action. When the action is against the partnership as such, service of summons on one of the members, personally, shall be sufficient service on the firm." Section 105-111, supra.
"If during the co-partnership any one of the partners should die, be absent, or from any other motive should not appear, the widow, children and heirs shall abide by what has been done up to said time and subject to the contingencies of the business pending for the respective pro rata of his interest, and no more, according to the adjusted accounts which the other partners shall present: Provided, that if the widow or heirs shall desire to

They assert that in New Mexico a partnership is a distinct legal entity; that the death of a copartner dissolves the entity; that the authority of the copartner to bind the entity ceases on its dissolution; and that, under section 100-105, supra, a partnership contract terminates on the death of a partner in the absence of express provision in the contract to the contrary.

In New Mexico a partnership is a distinct legal entity in the sense that it may be sued as such in the partnership name. Section 105-111, supra; Good v. Red River Valley Co., 12 N. M. 245, 78 P. 46. But each partner is individually liable for the contracts and obligations of the partnership, and, even in an action against the partnership in its own name, judgment may be rendered against a partner individually if he has been served with process or has appeared in the action.

Section 100-105, supra, was originally enacted in 1860 in the Spanish language and translated into English (N. M. Sess. Laws 1859-60, p. 100). The English translation carried forward into the present statute is not accurate. A better translation is set out in note 2, below.

In Gillett v. Chavez, 12 N. M. 353, 78 P. 68, 71, the court held that section 100-105, supra, provides "that the widow, children, or heirs of a deceased partner shall abide the result of a settlement of the partnership affairs, and they may continue the business by agreement." It is our opinion that under this section a surviving partner is not authorized to continue the business without the consent of the heirs of the deceased partner, but he is authorized to wind up the affairs of the partnership and to complete existing executory contracts. Such contracts are embraced in the phrase, "contingencies of the business pending." In such respects the statute merely declares the general law on the subject.

█ We conclude that the logging contract did not terminate on the death of Otey, and

continue the partnership under the same or other agreement, they shall execute new articles of agreement, or submit to the one already made." Section 100-105, supra.

NOTE 2.
"If during the life of the company it should cease to operate because of death of one of the partners or because of his absence or for any other reason, the widow, children, and heirs shall be bound by what has been done up to that time and they shall be subject to any contingencies arising out of the pending business, for their respective portions in his interest and no more, and the other partners shall present to them adjusted accounts. Provided, that if the widow or heirs desire to continue the same company, under the same or other articles, they shall execute a new writing or submit to the one already made."

that it was the duty of Cooper to carry out such contract as the surviving partner.

It is a general rule that a surety on a partnership bond is not liable for general defaults in duty or breaches of fidelity, as distinguished from particular contract requirements, occurring after the dissolution of the partnership by the death or withdrawal of a member or the addition of a member, or for breaches of a contract entered into after such dissolution, notwithstanding such defaults or breaches would otherwise constitute a violation of the condition of the bond. Conn. Mut. L. Ins. Co. v. Bowler, 6 Fed. Cas. page 299, No. 3106; Lumberman's Bank & T. Co. v. Sevier, 149 Wash. 118, 270 P. 291; Dupee v. Blake, 148 Ill. 453, 35 N. E. 867; Spokane Union Stockyards Co. v. Maryland Casualty Co., 105 Wash. 306, 178 P. 3; State v. Interstate Surety Co., 48 S. D. 341, 204 N. W. 650; Standard Oil Co. v. Arnestad, 6 N. D. 255, 69 N. W. 197, 34 L. R. A. 861, 66 Am. St. Rep. 604; London & L. Ins. Co. v. Holt, 10 S. D. 171, 72 N. W. 403; Mathews v. Garman, 110 Mich. 559, 68 N. W. 243; Rowley's Modern Law of Partnership, vol. 2, § 837.

█ Where however a person becomes surety for the performance of a particular contract by a partnership, a dissolution of the partnership will not discharge the surety unless the contract is discharged by the termination of the partnership. United States F. & G. Co. v. Burton Lumber Co. (Tex. Civ. App.) 221 S. W. 699; Kaufmann v. Cooper, 46 Neb. 644, 65 N. W. 796; Abbott v. Morrissette, 46 Minn. 10, 48 N. W. 416; Freeman v. Berkey, 45 Minn. 438, 48 N. W. 194; Kimmel v. State, 75 Ind. App. 168, 128 N. E. 708, 130 N. E. 239; Rowley's Modern Law of Partnership, vol. 2, § 837.

█ Furthermore it will be noted that the bond in the instant case was entered into by "C. H. Cooper and Charles B. Otey, doing business as Cooper and Otey, a partnership, * * * as Principal, and the National Surety Company * * * as surety," and that it expressly bound them, their "heirs, executors, administrators and successors, jointly and severally."

We conclude that, if Cooper was carrying out the logging contract as the surviving partner and in so doing breached the provisions of paragraph 15 thereof, the surety company is liable to the lumber company for losses sustained because of such breaches.

█ If the evidence of the surety company in support of its first affirmative defense was true, the partnership was released on April

1, 1928, from further liability under the logging contract, and Cooper then assumed the completion of such contract as an individual. The surety company contracted to indemnify against breaches of the contract by the partnership or by a surviving partner, as such, carrying out the contract, and the release of Otey and the partnership from the performance of the logging contract discharged the contract of suretyship. Friendly v. National Surety Co., 46 Wash. 71, 89 P. 177, 10 L. R. A. (N. S.) 1160; Warman v. Hat Creek Ranch Co., 202 Iowa, 198, 207 N. W. 532; Malanaphy v. Fuller, etc., Mfg. Co., 125 Iowa, 719, 101 N. W. 640, 106 Am. St. Rep. 332; Prior v. Kiso, 81 Mo. 241; Shuttee v. Coalgate Grain Co., 70 Okl. 6, 172 P. 780; Harris v. Taylor, 3 Sneed (Tenn.) 536, 67 Am. Dec. 576. The first affirmative defense should have been submitted to the jury.

It is a general rule that where a surety is sued alone he cannot, in the absence of a statute permitting it, avail himself of any claims of the principal against the creditor. Joyce v. Cockrill (C. C. A. 6) 92 F. 838; Tidewater Coal Exchange v. New Amsterdam Casualty Co. (D. C. Del.) 20 F.(2d) 951; Elliott v. Brady, 192 N. Y. 221, 85 N. E. 69, 18 L. R. A. (N. S.) 600, 127 Am. St. Rep. 898; Willoughby v. Ball, 18 Okl. 535, 90 P. 1017. New Mexico has no statute permitting such a set-off, and section 105-417, N. M. S. A. 1929, provides that "the counterclaim * * * must be one existing in favor of a defendant and against a plaintiff." The set-off pleaded was not one existing in favor of the surety company. The authorities recognize an exception to the general rule where either the principal or the creditor is insolvent. Fidelity & Deposit Co. v. Duke (C. C. A. 9) 293 F. 661; Tidewater Coal Exchange v. Casualty Co., supra; Willoughby v. Ball, supra. Neither the insolvency of the partnership nor of Cooper was pleaded or proven. However, Cooper was made a party by cross-complaint and he consented that the surety company offset the credit due him from the lumber company. The lumber company tendered an issue as to the amount of such credit by pleading the balance due it after applying the amount of credit which it admitted. The surety company set up the amount of credit claimed by Cooper as a set-off. The lumber company neither demurred nor moved to strike such set-off. Under these circumstances we are of the opinion that the lumber company and Cooper consented that the amount of such credit should be adjudicated and deducted from the claim of the lumber company, and that the court should have submitted the set-off to the jury under proper instructions.

The cause is reversed and remanded with instructions to grant the surety company a new trial.